## IN THE

# SUPREME JUDICIAL COURT,

### IN THE

# COUNTY OF LINCOLN,

### ARGUED AT MAY TERM, 1845.

JOHN K. MILLER & al. *versus* CHARLES MILLER.

Under our form of execution, the officer must necessarily proceed, first to arrest the body, or to seize the goods, or to levy on the lands, and cannot proceed simultaneously in each form; and the proper proceedings in either mode would operate, *prima facie*, as a satisfaction of the debt.

By the common law, when the debtor has been arrested and imprisoned, and a return thereof has been made upon the execution, the precept has performed its office, and its legal life and efficiency has been destroyed.

The Stat. 1835, c. 195, § 12, provided, that the release of the debtor from his arrest or imprisonment, under the provisions of the act, should not impair the right of the creditor to his debt; and the Stat. 1828, c. 410, provided a remedy for restoring life to the execution, when the debtor has been released from his arrest or imprisonment before the return day of the execution had arrived — that "the creditor, by procuring the sheriff or jailer to certify a true copy of such permission or certificate upon such execution, may cause the same execution to be levied on any real or personal estate of such debtor." But without such certificate the execution is then inoperative, and a levy upon real estate under it is void.

Where no such return had been made on such execution prior to a levy upon land under it, and no application had been made in behalf of the creditor to the sheriff or jailer for that purpose before the levy was made, as the defect did not arise from any omission or defect in not making a full and perfect return of all acts which an officer had performed or caused others to perform, but from a neglect to have an act performed necessary to give efficiency to the execution, the requisite certificate cannot be permitted to be made afterwards by way of amendment.

WRIT OF ENTRY. To support their action, at the trial, before SHEPLEY J., the demandants introduced in evidence a

judgment and execution in their favor against Christopher Benner, and a levy upon the demanded premises. It appeared that on Jan. 8, 1841, the execution was issued; that on Feb. 3, 1841, Benner was arrested upon it by an officer and committed to prison; that on the 22d day of the same February, Benner took the poor debtor's oath before two justices of the peace and of the quorum, and was discharged from imprisonment; and that on the twenty-fourth day of the same month, the return day of said execution not having arrived, the same was levied in due form of law upon the demanded premises. There was no return on the execution excepting of the arrest and commitment of Benner and of the proceedings in making the levy.

The tenant claimed under a deed of the premises from Benner prior in point of time to the levy; and this deed, the demandants contended, was fraudulent and void as to them, being prior creditors.

The tenant objected to the levy, because the body of Benner, the debtor, had been arrested on the execution, and there was no return of any officer thereon certifying that the debtor had been discharged; and therefore, that there was no authority to levy under that execution. The demandants then made a motion for leave for the proper officer to amend the returns on the execution, so as to bring the case within the provisions of the statute of 1828, c. 410. It was not made to appear, that any officer was directed or requested to make such return prior to the levy. The tenant objected to the granting of such amendment.

The presiding Judge, for the purpose of settling this question before a trial of the others, overruled the motion; and the demandants filed exceptions.

The case was very fully argued by

*Ruggles & Bulfinch,* for the demandants — and by

*J. G. Reed* and *M. H. Smith,* for the tenant.

In their arguments, the *counsel for the demandants* cited *Buck* v. *Hardy,* 6 Greenl. 162; *Howard* v. *Turner, ib.* 106;

*Spear* v. *Sturdivant*, 14 Maine R. 267 ; *Means* v. *Osgood*, 7 Greenl. 148 ; *Avery* v. *Butters*, 9 Greenl. 16 ; *Eveleth* v. *Little*, 16 Maine R. 374 ; *Colby* v. *Moody*, 19 Maine R. 111 ; *Hearsey* v. *Bradbury*, 9 Mass. R. 95 ; *Campbell* v. *Stiles*, *ib.* 217 ; *Wood* v. *Ross*, 11 Mass. R. 271 ; *Ingersoll* v. *Sawyer*, 2 Pick. 276 ; *Clapp* v. *Watson*, 8 Pick. 450 ; Stat. 1828, c. 410, § 3 ; Stat. 1831, c. 520, § 4.

*The counsel for the tenant*, in their arguments, cited Dane, c. 184, art. 11, § 8; Stat. of Mass. (Metc. Ed.) vol. 1, 169 ; Rev. Stat. of Maine, c. 115, § 9, 10 ; Rev. Stat. c. 148, § 60 ; Stat. 1828, c. 410 ; Stat. 1831, c. 520 ; Rev. Stat. c. 94, § 44 ; 7 Greenl. 146 ; *Williams* v. *Amory*, 14 Mass. R. 20 ; *Brinley* v. *Allen*, 3 Mass. R. 561 ; 6 Mass. R. 40 ; 14 Mass. R. 286 ; 16 Mass. R. 65 ; 1 Metc. 130 ; 15 Maine R. 153.

The opinion of the Court was drawn up by

SHEPLEY J. — The demandants recovered judgment for a debt due to them from Christopher Benner in April 1840, and sued out a pluries execution thereon on January 8, 1841, by virtue of which Benner was arrested and imprisoned on February 3, 1841. He was discharged from his imprisonment by taking the poor debtor's oath on February 22, 1841, and on the 24th day of the same month, by virtue of the same execution, a levy was made upon the lands of the debtor. The tenants, having received a conveyance of the land from Benner before the levy was made, resist the title of the demandants, and insist, that their levy was void, it having been made by virtue of an inoperative precept. The demandants, while they insist, that their levy was legally made, have filed a motion for leave to have the proper officer make such a return upon the execution as may bring their case within the provisions of the third section of the act of February 26, 1828, c. 410.

According to the English practice the judgment creditor may sue out a writ of capias and of *fieri facias* at the same time, but he cannot use them both at the same time. *Miller* v. *Parnell*, 6 Taunt. 370. An arrest and imprisonment of the

body by the capias was not, properly speaking, a satisfaction of the debt at common law, yet it was so far regarded as such, that when connected with a release or discharge of the debtor, it amounted to plenary evidence of satisfaction. *Tanner* v. *Hague,* 7 T. R. 420; *Blackburn* v. *Slupart,* 2 East, 243. So when sufficient goods be taken on the *fieri facias* the debtor is discharged. *Mountney* v. *Andrews,* Cro. Eliz. 237.

Our execution appears to have been framed by a combination of the English forms of an execution against the body, against the goods and chattels, and against the lands. The creditor was not thereby enabled to proceed against his debtor simultaneously under each form, and to distress him by an attempt to collect the debt in two or three different modes at the same time. He could not do so, for the officer must necessarily proceed first to arrest the body, or to seize the goods, or to levy on the lands; and the proper proceedings in either mode would operate *prima facia* as a satisfaction of the debt. In this case there had been such proceedings by virtue of the execution issued on Jan. 8, 1841, before the levy, as might result in a satisfaction of the debt. The debtor had been arrested and imprisoned, and a return thereof had been made upon the execution. The precept had performed its office, and by the common law, its legal life and efficiency were destroyed. In *exparte Knowell,* 13 Ves. 192, the Lord Chancellor held, that the debt was discharged by the imprisonment and discharge, by virtue of his certificate, of a bankrupt debtor, who had been arrested on execution after the commission had issued; and that no debt existed, which could be proved under the commission.

It is insisted, that the rule of the common law, which regards the debt as satisfied, and the life of the precept as destroyed, should not be received as the law at this day in our community, when an arrest and discharge of the body rarely produces a satisfaction of the debt. There might be reason for asking the Court to declare, that the rule had ceased to be operative, because the reasons, upon which it was founded, have ceased to exist, if the legislature had not interposed and

provided a remedy by statute for the evils apprehended by its continued existence. This having been done, it becomes unnecessary and improper for the Court to attempt to provide in some other mode for the consequences, which might otherwise have resulted from an arrest and discharge of the debtor. The twelfth section of the act then in force for the relief of poor debtors, c. 195, provided, that the release of the debtor from his arrest or imprisonment, under the provisions of the act, should not impair the right of the creditor to his debt, but that it should remain in full force against the property of the debtor. And the act of the 26th February, 1828, c. 410, provided a remedy for the destruction of the life of the precept by such proceedings. Thus the whole change in the common law, designed by the legislature in consequence of such proceedings, had been made by statute. The provision for restoring life to the execution was, that when the body had been arrested and discharged "by the written permission of the creditor, or on the certificate of two justices of the quorum, who allowed the oath, and the day of return of said execution not having arrived, the creditor by procuring the sheriff or jailer to certify a true copy of such permission or certificate upon such execution, may cause the same execution to be levied on any real or personal estate of such debtor in the same manner, as he might have done before the arrest and commitment of such debtor."

The creditor in this case had not procured such a return of the discharge of the debtor to be made on his execution; and it does not appear, that he had applied to the sheriff or jailer for that purpose before the levy was made. It is insisted, that the defect may be now supplied. But the sheriff or jailer, by making a return of such discharge upon it, as of a date subsequent to the levy, could not impart to it the necessary efficiency at the time of the levy. And how can he now make such a return as of a date anterior to the levy, and do it under the sanction of his official oath, when in fact no such duty was then entrusted to, or imposed upon him, or attempted to be performed by him? It could not be considered an

amendment, for he had not then performed or attempted to perform any such duty. The cases cited would not authorize such a procedure. One class of them would authorize an officer, to whom a precept had been entrusted for service, to amend a defective or informal return, or even to make a new one, that it might state truly and fully all the acts, which he had performed or caused others to perform. The amendment in the case of *Howard* v. *Turner,* 6 Greenl. 106, by which the person, who had sworn the appraisers, was allowed to make known the character, in which he performed the act, only made his certificate correspond to the fact, for he had administered the oath as a justice of the peace. Another class of cases shew, that judicial writs and precepts may be amended by causing them to be made into such a form as they should have had, when issued. This has been done on the principle, that it was the duty of the clerk by law, or by the order of the Court, to have issued them in a particular form. And the Court will always cause its clerk to supply his own defects, or correct his own errors. Such was the case in the 3d Greenl. 29, where the seal had been omitted to be affixed to an execution. And the case of *Campbell* v. *Stiles,* 9 Mass. R. 217, where a writ of review, being a judicial writ, was amended by inserting a direction to the sheriff of the county, who had served it. The amendment made in the case of *Hearsey* v. *Bradbury,* 9 Mass. R. 95, by inserting a direction to a constable, who had served the writ, appears to have been allowed on the ground, that " it was but a matter of form." In the present case the act to be performed was essential to the life of the precept. The amendment in the case of *Clapp* v. *Watson,* 8 Pick. 449, permitting the captain of a company of militia to insert the time, when he administered the oath to his clerk, only made the certificate declare the whole truth in relation to the transaction. And such in principle were the cases of *Avery* v. *Butlers,* 9 Greenl. 16, where the certificate was amended by causing it to state, that the clerk took as well as subscribed the oath ; and of *Colby* v. *Moody,* 19 Maine R. 111, where the justices

were allowed to amend their certificate, so that it might state, what oath was actually administered.

The case of *Commonwealth* v. *Hall*, 3 Pick. 262, was more like the present. The statute required, that the clerk of a company of militia should be appointed by a certificate on the back of his warrant as sergeant. There was a certificate on the back of it, that he had been sworn as clerk, but no certificate of his appointment. It was proposed to amend by making such a certificate, but it was not permitted.

The defect in the case does not arise from any omission or defect in not making a full and perfect return of all acts, which an officer had performed or caused others to perform, but from a neglect to have an act performed necessary to give efficiency to the execution.

*Exceptions overruled.*