*234
 
 Baldwin, Justice,
 

 delivered the opinion of the court. — In the court below, this was an action of ejectment, brought by Thomson, to recover possession of a lot in the city of Washington. It came up on a case stated by the parties, which contains all the facts on which the cause depends, and is as follows :
 

 N365] In this case, it is agreed, “that one Charles Glover was seised in fee of the messuage, &c., in dispute, on and before the 15th May 1815, and so continued seised, until the 4th January 1819, when he bargained and sold the premises to the defendant, John Tayloe, as hereinafter mentioned ; that on the 15th June 1818, Owen
 
 &
 
 Longstreth obtained two judgments at law against the said Glover, as indorser of two ^promissory notes, passed to the said Owen & Longstreth ; the one for $681.74, with interest from the 15th February 1817,.till paid, and costs; the other for $674.20, with interest from the 15th December 1816, till paid, and costs ; which judgments, by an arrangement between said Owen & Longstreth, and the lessor of the plaintiff, or the lessor of the plaintiff, together with his partner Maris, trading under the firm of Thomson
 
 &
 
 Maris, were transferred, with other choses in action, by Owen & Longstreth, to the lessor of the plaintiff, or to said Thomson & Maris, so as to place the proceeds of said judgments at the disposal of said Thomson, or Thomson
 
 &
 
 Maris, and make the same applicable to the security of said Thomson, or Thomson & Maris, against certain engagements entered into by him or them, for Owen
 
 &
 
 Longstreth ; and were prosecuted for the benefit of said Thomson, or Thomson
 
 &
 
 Maris. “ That
 
 ca. sas.
 
 were issued on said judgments, on the 10th May 1820, returnable to June term 1820, and duly served on said Glover, who was duly committed to the jail of the county aforesaid, under the said execution. That he was thereupon admitted to the benefit of the prison-rules, upon giving bonds and sureties, pursuant to the act of congress in such case provided. That the said Glover having broken the prison-rules and the conditions of his said bonds, suits were brought upon the same against him and his surety, returnable to October term 1822, at the instance and for the benefit of the said assignee or assignees of the said judgment; and judgments were duly obtained in said suits against said Glover (but'not prosecuted to judgment against his surety, he having died, and no administration on his estate in this district), for the respective amounts of said original judgments, with interest and costs, at October term 1823 ; upon which judgments so obtained against Glover, on said prison-bounds bonds,
 
 fi. fas.
 
 were duly issued, returnable to December term 1824, and then returned
 
 nulla bona.
 
 That at the same term of December 1824, the attorney upon the record of the said Owen & Longstreth, still acting at the instance and for the benefit of the said assignee or assignees of the said original judgments, moved the court to recommit the , said Glover, *under the original
 
 ca. sas.
 
 issued on said judgments, and J before execution as aforesaid ; the ground of which motion was, that more than twelve months had expired since the said Glover had been admitted to the benefit of the prison-rules, as aforesaid, and that the act of congress in such case provided, had limited the benefit of such prison-rules to the term of twelve months ; upon which motion, the said Glover was recommitted, by order of said court, under the said
 
 ca. sas.,
 
 to the common jail aforesaid ; where he remained, in virtue of his said recommitment, until
 
 *235
 
 the 5th February 1825, when he was duly discharged as an insolvent debtor, pursuant to the act and acts of congress for the relief of insolvent debtors within the district of Columbia; he, the said Glover, having, in all things, complied with the requisites of the said act, to entitle him to such discharge. That after the said original judgments were rendered against the said Glover, as aforesaid, to wit, on the 4tb January 1819, he bargained and sold the said messuage, &c., now in dispute, to the said John Tayloe, in fee-simple, for and in consideration of, the sum of $-, then and there duly paid to him by the said Tayloe, and conveyed the same to him in fee, by a deed of bargain and sale, duly executed, acknowledged, certified, and recorded according to law, by virtue of which bargain, sale and conveyance, said Tayloe entered upon said bargained and sold premises, and ever since has held, possessed and enjoyed the same. That no evidence is offered by plaintiff, that at the time of the said bargain, sale and conveyance, and of the payment of the said purchase-money to Glover, Tayloe had any actual notice of the said original judgments, or either of them
 
 ;
 
 that is, no other than the constructive notice arising from the records of said judgments. That after said Glover had been discharged as an insolvent debtor, as aforesaid,
 
 fi. fas.
 
 were issued from the clerk’s office on the said original judgments, at the like instance, and for the like benefit, of the said assignee or assignees of those judgments, returnable at May term 1825 ; and were levied upon the said bargained and sold premises (besides other real property, which had been before sold and conveyed to other persons by said Glover), then in possession of, and held by, said Tayloe, under his said purchase; and the said bargained and sold premises were afterwards exposed to *sale r!S by the marshal, under said executions, and purchased by the lessor of the plaintiff, to whom they were conveyed by the said marshal, by a deed in the usual form, duly executed, acknowledged and recorded. That the lessor of the plaintiff, by whose order the said executions issued, had actual notice of the said bargain, sale and conveyance, from Glover to Tayloe, and of the possession of Tayloe, before the issuing of the said executions. That for the purchase-money, the lessor of the plaintiff paid nothing
 
 ;
 
 but entered credit on said judgments, or one of them, for the amount of the same. Upon the foregoing case stated, it is submitted to the court, if the lessor of the plaintiff be entitled to recover the said messuage, &c.; and if the law be for the plaintiff, upon the facts aforesaid, then judgment in the usual form to be entered for the plaintiff ; otherwise, for the defendant. It is agreed, the premises in dispute are of the value of $1000 and upwards.”
 

 Upon the case stated, judgment in the court below was given for the lessee of the jilaintiff, for his term yet to come, and unexpired, &c. To which judgment, the defendant below sued this writ of error.
 

 The first point made by the plaintiff in error is, that by the law of Maryland, which it is admitted is the rule by which this point is to bo determined, a judgment is no lien on real estate, before execution issued and levied. It seems, there is no act of assembly of that state applicable to the case; but that by an act of parliament of 5 Geo. II.,
 
 7,
 
 lands in the colonies are subject to execution as chattels, in favor of British merchants; that this statute has been adopted and in use in Maryland, ever since its passage, as the only one under which lands have been taken in execution and sold. It is admitted, that though this statute extends in terms only to
 
 *236
 
 executions in favor of British merchants, it has long received an equitable construction, applying it to all judgment-creditors. The plaintiff’s counsel do not assert that this construction has ever been questioned, or that it has not been uniform throughout the state ; but asks this court to review this construction, and give to the statute such an one as will confine it to the only case for which it makes a provision.
 

 *Ns conSress bas made no new law on this subject, the circuit court were bound to decide this case according to the law of Maryland ; which does not consist merely in enactments of their own, or the statutes of England in force, or adopted by the legislature. The adjudications of their courts, the settled and uniform practice and usage of the state, in the practical operation of its provisions, evidencing the judicial construction of its terms, are to be considered as a part of the statute : and as such, furnishing a rule for the decisions of the federal courts. The statute and its interpretation form together a rule of title and property, which must be the same in all courts. Had this question occurred in the courts of that state, they would be bound to say, that it was now too late to overlook the practical construction which this statute has received for a century, and on which numberlesss titles depend. Property would be held by a very precarious tenure, and infinite confusion would be introduced, if any court should now resort to its terms as furnishing the class of cases in which lands could be sold on execution, and declaring it to extend to none other. It is enough for this court to know, that by ancient, well-established and uniform usage, it has been acted on and considered as extending to all judgments in favor of any persons ; and that sales under them have always been held and respected as valid titles. The circuit court were right in deciding that the plaintiff below was entitled to all the benefits of the statute of 5 Geo. II. Though it does not provide that a judgment shall be a lien from the time of its rendition, yet there is abundant evidence, that it has always been so considered, and so acted on.
 

 Though the researches of the counsel for the defendant in error have not enabled them to furnish the court with any express judicial decision on this particular question, yet the evidence adduced is not less satisfactory to show that it has long since been settled. The case of
 
 Dorsey
 
 v.
 
 Worthington,
 
 in 4 Har.
 
 &
 
 McHen. 533, &c., shows, that so early as 1771, it was adopted as an established principle; and the later cases in 3 Har.
 
 &
 
 McHen. 450 ; 2 Har. & Johns. 64, 73 ; 3 Ibid. 497, are founded on it, as a well-known preexisting rule, not questioned even by counsel; but apparently of a time so remote as to be beyond not only the memory of any living jurist, but the reported decisions of any *court. The decisions in the cases referred to are wholly unsupported and unaccountable, on any other construction of the statute, than the one contended for by the defendant in error. *369]
 

 If a judgment was not a lien from its date, an alienation before execution would prevent it from attaching' afterwards. Yet the plaintiff may proceed and sell lands aliened after judgment, without a
 
 scire facias
 
 against the alienee. 2 Har. & Johns. 72. So of lands in the hands of a purchaser under a younger judgment, 3 Har. & McHen. 450 ; or against a
 
 terre-tenant,
 
 after the defendant had been arrested on a
 
 ca. sa.
 
 on the same judgment, imprisoned, escaped, and a judgment against the sheriff. 3 Har. & Johns. 497 ; s. p. 4 Har.
 
 &
 
 McHen. 533. There can, therefore, be no doubt, that
 
 *237
 
 from the earliest period, the courts of Maryland had established it as a rule of property, which had become unquestioned, long before the cession of this district to the United States, that a judgment is a lien,
 
 per se,
 
 on the lands of the defendant.
 

 The next question which arises is, whether the proceedings which have been had on the judgment in question, prior to the execution on which this lot was sold, have impaired or annulled its lien. The plaintiff had an undoubted right to an execution against the person, and the personal or real property of the defendant — he has his election ; but his adoption of any one does not preclude him from resorting to the other, if he does not obtain satisfaction of the debt on the first execution. His remedies are cumulative and successive, Avhich he may pursue, until he reaches that point at which the law declares his debt satisfied. A
 
 ca. sa.
 
 executed does not extinguish it. If the defendant escape, or is discharged by operation of law, the judgment retains its lien, and may be enforced on his property. The creditor may retake him, or sue the sheriff for the escape. A judgment against him does not amount to a. satisfaction of the original debt, but it retains its lien, until the plaintiff has done or consented to some act, which amounts in law to payment; as the discharge of defendant from custody ; or, in some cases, a levy on personal property. But we know of no rule of layv, which deprives a plaintiff in a judgment of one remedy, by the' pursuit of another, or of all which the law gives him. The doctrine of election, contended for by the plaintiff in error (if it exists in any case of a creditor, unless under the statutes *of bankruptcy), has never been applied to a case of a defendant in execution discharged under an insolvent act, by opera- L tion of law; a contrary principle is recognised, as well settled, in 5 East J4V.
 

 The greatest effect which the law gives to a commitment on a
 
 ca. sa.
 
 is, a suspension of the other remedies on the judgment, during its continuance ; whenever it terminates, without the consent of the creditor, the plaintiff is restored to them all, as fully as if he had never made use of any. The cases cited by the defendant from Bull. N. P. 69 ; 5 Co. 86
 
 b (Blumfields Case),
 
 and those in the courts of Maryland, fully support, and are decided on this principle. In 1 Ves. 195, Lord Hardwicke decided, that Avhere a defendant was in custody under a
 
 ca. sa.,
 
 and a
 
 fi. fa.
 
 was afterwards taken out on the same judgment, and a farm levied on and sold, the purchaser, being a stranger, should hold it, as
 
 thefi. fa.,
 
 though irregular and erroneous, was not void. The authority of this decision has never been questioned, and fully establishes the position that a
 
 ca. sa.
 
 neither extinguishes the debt, nor annuls the subsequent proceedings on a
 
 fi. fa. /
 
 though the case would have been different, had the plaintiff in the judgment been the purchaser. In the present case, we must consider Thomson as the plaintiff in the judgment on which the lot in controversy has been sold, and that the sale may be open to objections, which would not be good against a stranger purchaser ; but we can perceive in the case stated no facts which in any manner legally invalidate his purchase. He had aright to make use of the
 
 ca. sa.,
 
 until he obtained satisfaction. The escape of Glover, by his breach of prison-bounds, could not effect the lien of the judgment. The plaintiff was not bound to resort to the prison bond as his only remedy a judgment on it against Glover was no more a bar to a
 
 *238
 

 fi. fa.,
 
 than a judgment against the sheriff for an escape ; and Glover could place himself in no better situation, by breaking his bond, than by remaining a true prisoner. Whether he escaped, or remained in prison-bounds, the marshal was bound to recommit him to close custody, after the expiration of twelve months from the date of the bond. (3d sect, of the act of June 1812, Burch 277.) This was a measure directed by law, without any application t to the creditor; its being done *in this case, on his motion, cannot ' •* vary the effects ; for Glover, in either case, must remain in custody, until the debt for which he was committed was paid, or lie be discharged under the act of congress for the relief of insolvent debtors. Up to this time, no act was done by the judgment-creditor which could impair the legal effect of his judgment, by any rule of the common law, the laws of Maryland, or the district of Columbia ; or by any legal adjudication of the courts of that state on the construction of the statute.
 

 It remains only to consider the effect of the proceedings under the insolvent law of the district, under which Glover was discharged. The counsel for the plaintiff in error relies on the last clause of the fifth section of this law, as conclusive against the proceedings on the judgment, subsequent to Glover’s discharge. “And no process against the real or personal property of the debtor shall have my effect or operation, except process of execution, and attachments in the nature of executions, which shall have been put into the hands of the marshal antecedent to the application.” The true meaning of this clause can be ascertained from the' provisions of the preceding part of the law; the debtor is to make out a list of all his property, real, personal and mixed, and offer to deliver it up to the use of his creditors ; the court then appoint a trustee, who is required to give bond with surety for the faithful performance of his trust. The debtor is then directed to execute to the trustee a deed, conveying all his property, rights and credits.
 

 The lot in question was not the property of Glover, at the time of his application for the benefit of the law ; he had conveyed it in fee, in January 1 819, and received the purchase-money, and therefore, neither could have any property in the lot, or right or credit arising from the sale; nothing to deliver up to his creditors or convey to the trustee ; no question could arise between them and the judgment-creditor; and the trustee could have no right to sell the lot, and distribute the proceeds among the creditors of Glover. The fifth section applies only to the property which passed to the trustee, by the deed from the insolvent, not to what he had conveyed to Tayloe, in 1819, six years before Glover’s discharge. The trustee acquired * , what the debtor had at the time of his application, *or was in any -* way entitled to, that he could sell, and must distribute ratably among all the creditors, after satisfying incumbrances and liens. The application of the clause of this section, before recited, was intended only for a case where one creditor sought to obtain a preference, by process against the debtor’s property, after his application. In such case, it declared, it should have no effect or operation ; but where the incumbrance or lien had attached, before the application, it had a priority of poayment out of the assigned fund. Thus understood, the case is perfectly plain. This law can have no application to real estate, which never did, and never could, come into the hands of the trustee for disti-ibution ; but left the judgment-cred
 
 *239
 
 itor with all his rights to enforce the lien of his judgment on lands of the debtor, in the hands of the plaintiff in error ; who purchased after his rendition, and must hold it as the debtor did, subject to his lien.
 

 It is not alleged, that the proceedings subsequent to the levy on the lot are erroneous or void ; they appear to have been regular, and therefore, vested the title to the lot in controversy in the lessor of the plaintiff. The judgment of the circuit court is affirmed, with costs.
 

 This cause came on to be heard, on the transcript of the record from the circuit court of the United States for the district of Columbia, holden in and for the county of Washington, and was argued by counsel: On consideration whereof, it is considered, ordered and adjudged by this court, that the judgment of the said circuit court in this cause be and the same is hereby affirmed, with costs.