WILLIAM MILLER *et al.*, plaintiffs in error, *v.* THE COUNTY OF
MACOUPIN, defendant in error.

*Error to Macoupin.*

A. was appointed School Commissioner, and gave bond, as required by law, with
sureties.   He held the office from 1834 to 1839, giving bond annually, but
with different security upon the various bonds.   In going out of office in 1839,
he had not legally disbursed any portion of the school fund, nor did he pay
over any to his successor.   The county sued the bond of 1837: *Held,* that
there was no re-appointment, but a continuing term of office, and that the
securities were liable for the money in his hands during the year 1837.

DEBT on School Commissioners' bond, brought by the de-
fendant in error against the plaintiffs in error in the Macou-
pin Circuit Court, and heard before the Hon. Samuel D.
Lockwood, at the October term 1841.   Judgment for the
penalty of the bond, $12,000, to be discharged on payment
of $968·69, the damages assessed by the Court.

By agreement, the cause was submitted to the Court below
on facts stated, with a stipulation that either party might
except to the opinion of the Court, and take the cause to this
Court, by appeal or writ of error, and a further stipulation
that the same should there be determined on its merits.

*L. Trumbull,* for the plaintiffs in error, cited the Digest
of School Laws, 14, § 7; Ib. 21, § 5; *United States v. Far-
rar,* 5 Peters, 372.

As to the carrying of balances of account from year to
year, and its effect upon the securities, see *Boston Hat Man-
ufac. Co. v. Messenger,* 2 Pick. 238.

The agreement shows that a certain amount of funds was
in the hands of the Commissioner in June, 1837, and June,
1838.   If he had paid over, or had it in his hands to pay
over, which is the same thing, to the successor, his.securities
are in no default.   He was the successor, and could not,
therefore, pay over.

*J. M. Palmer,* for the defendant in error.

The bond mentioned in the case was given by the plaintiffs

in error in June, 1837, in conformity with the fifth section of the Act of 1835, and is admitted by the case to be in all respects in compliance with the law. Acts of 1835, 28, § 5.

Plaintiffs in error insist that they are discharged by the act of the County Commissioners of Macoupin county in the acceptance of the bond of 1838 from their principal. See Acts of 1829, 152-3; Acts of 1825, 28, §§ 5, 7; *Pendleton* v. *The Bank of Ky.*, 1 Monroe, 181; *Amherst Bank* v. *Root*, 2 Metc. 522; *United States* v. *Nichols*, 6 Peters' Cond. R. 611.

If the Commissioners had been guilty of negligence, it would have not discharged Miller's securities. *Madison County* v. *Bartlett*, 1 Scam. 70; *People* v. *Russell*, 4 Wend. 570; *Albany Dutch Church* v. *Vedder*, 14 Wend. 165; *The People* v. *Berner*, 13 Johns. 383; *Commonwealth* v. *Preston*, 5 Monroe, 589; *United States* v. *Kirkpatrick*, 5 Peters' Cond. R. 739-40; *United States* v. *Vanzandt*, 6 do. 264; *Dox* v. *Post Master General*, 1 do. 325 ; *Smith* v. *United States*, 5 do. 294.

Miller's admissions are sufficient to charge his securities, and his refusal to pay over to his successor, is sufficient evidence of his defalcation. *Pendleton* v. *The Bank of Ky.* 1 Monroe, 181; *Amherst Bank* v. *Root*, 2 Metc. 522; Ib. 541-2; Gilmer, 325; 1 U. S. Dig. 440.

His account books are public records, and would be evidence independently of the principle in the cases above cited. 1 Starkie, 209.

There is no error in the amount of the judgment rendered by the Court below of which the plaintiffs can complain, for the Court below have taken the view of the case most favorable to them, for it excluded all sums received before the date of the bond and after the year expired, for which they were bound. *Bailey* v. *Campbell*, 1 Scam. 47.

*S. T. Logan*, for the plaintiffs in error, in conclusion.

The new bond is intended as a substitute for the former one, not cumulative or additional. The decision in 1 Monroe, 181, is based upon a particular statute, and the bond

expressly declared not to be a substitute. Each bond is for the faithful performance of the duties for the year, and the securities in this case are not holden, unless the new bonds are collateral to the old ones.

The Opinion of the Court was delivered by

SCATES, J.* An agreed case was submitted to the Court below, and judgment was rendered thereon for the county for $12,000, the penalty of the School Commissioner's bond, and damages assessed at $968·69. This is assigned for error.

By the agreed case, it appears that Miller was School Commissioner for that county, from the year 1834 to 1839, both inclusive, and that he renewed his bond according to law in June every year. In the year ending June, 1837, there came into his hands $1637·44. In the year ending June, 1838, he received $1033·61; and in the year ending June, 1839, he received $318·99. It was agreed that when he went out of office in 1839, he had not legally disbursed any portion of this money, nor did he pay over any to his successor, although requested.

The question presented is, what portion, if any, are the plaintiffs in error, the securities during the year 1837, liable to pay? It appears that Miller opened yearly an account, in which he not only debited himself with all the moneys received during the year, but also with all that was on hand at the beginning of the fiscal year. And it is contended, that this transfer of the debits from year to year is a payment, or in the nature of a payment, to the successor in office, which will discharge the securities, according to the rule adopted in the case of the *United States* v. *Kirkpatrick*, 5 Cond. R. 733. By the rule there laid down, where an officer had held an office during several terms, giving several bonds, and being in default, any payments he might make would be applied by law in discharge of the first bond, where neither party had directed the application, unless subsequent sureties

*WILSON, C. J., did not sit in this case.

would show such payment applicable to the discharge of their liability.

This rule is not applicable to the case before us. Here was no re-appointment, but a continuing term of office, with annual bonds conditioned for the faithful performance of the duties required, or thereafter to be required by law. It was the duty of the Commissioner by law to loan all moneys in his hands, belonging to the county and several townships, and keep the same at interest, except such sums as might be directed by law to be disbursed from time to time. Now, he neither loaned, disbursed, or paid over to his successor, any portion of these funds. He only brought forward and stated them in account, from year to year. Thus, by including all previous receipts in the statement of each year's account, he showed the whole amount in his hands. But surely no one can rationally contend that this is a payment. He was not re-appointed annually; he did not succeed himself; it was but one term of office from 1834 to 1839. It might as reasonably be contended that one in default, having received a new appointment, by including the amount in default in stating an account, thereby paid it. Such a position is not sustained by law, reason or justice. Not having, therefore, made loans, disbursements, or payments to his successor of any portion of the money received during the year 1837, the securities are still liable to account for that sum. The Court below, it appears, did not include that whole sum in this judgment; but of this the defendants have no right to complain.

Judgment affirmed with costs.

The following separate opinion was delivered by

CATON, J. I do not dissent from any of the principles laid down in the Opinion just delivered, but in order to avoid any misconstruction of my views of the liabilities of the parties, I feel called upon succinctly to express them.

Miller was appointed School Commissioner for the county of Macoupin in the year 1834, when he gave a bond as re-

quired by law, as also in June of each succeeding year till he went out of office in 1839, with nearly all the money in his hands which he had received during the whole time, which he refused to pay over to his successor. This suit is on the bond executed in 1837.

I cannot avoid the conclusion that all of these bonds are continuing liabilities, securing against any misconduct of the Commissioner from their respective dates to the termination of his office. One of the conditions of each of these bonds was, either in express terms, or in legal effect, that at the termination of his office, the Commissioner would pay over to his successor all moneys in his hands belonging to the fund. The liability of the sureties on these bonds could not cease till this had been done, and he had no opportunity of doing it till the termination of his office in 1839, and the appointment of a successor. I do not understand the condition of the bond to have been, that he would pay over to his successor the money that he should receive in any particular month or year, but all moneys in his hands at the termination of his office. It is not questioned that the office, to which he was appointed in 1834, did not terminate till 1839. He received no new appointment in the intermediate time, but held throughout under the first and only one. It is true that the law required him to give another or new bond on the first of June in each year, unless the County Commissioners, in their discretion, saw fit to extend the time, which they might have done to any period which they chose. This is not like the case where the appointment is for a limited period, and the same person is appointed several successive times. In that case, he would be his own successor at each appointment after the first. In that case, I have no doubt the liability of the old sureties would terminate with the authority or commission under which he held the office when they entered into the bond. Suppose the County Commissioners had seen fit to have extended the time for entering into the subsequent bonds till his removal or resignation in 1839, can there be a doubt but the parties to this bond would

have been liable for all moneys in his hands at that time, and which he refused to pay over to his successor? Where the bond is for his proper conduct during his office and at its termination, it must necessarily be a security against his misconduct while he holds under the same appointment. Unless this be a correct view of the subject, no action can be maintained on any of these bonds except the last, on the facts stated in this agreement. If each bond, as it was given, superseded the last as to all subsequent acts or omissions, then the liability must alone fall on the obligors in the last bond; for the only breach of which the Commissioner was guilty, according to the case made, was failing to pay over the money in his hands at the termination of his office, which took place after the execution of the last bond.

If this view of the subject be correct, it follows as a necessary consequence, that the plaintiffs might recover on any one or each of these bonds the full amount of money in the hands of the Commissioner, and which he failed to pay over to his successor; and that those from whom it is collected may compel a contribution on all of the other bonds. If I am correct, the judgment should have been greater than it is, but of this, no complaint is made.

I think the judgment should be affirmed.

PURPLE, J., said: I concur in the opinion delivered by Judge Caton, and also in the opinion of the majority of the Court. I cannot see that there is necessarily any conflict between them.

The following dissenting opinion was delivered by

YOUNG, J. As I cannot concur in the opinion expressed by a majority of the Court, I will briefly state the reasons which have led me to a contrary conclusion. The case was submitted to the Court below on the following agreement of facts: "That William Miller was the School Commissioner of Macoupin county from 1834 to 1839, and executed official bonds from year to year, in the month of June, as required by law. His bond in 1836 was executed with Stith M. Ot-

well, Bela White and Abram S. Walker as his securities; in 1837 with John R. Lewis, Bela White, John M. S. Smith and Samuel Keller as his securities; and in 1838 with Jefferson Weatherford, Bela White, John M. S. Smith and John R. Lewis as his securities. In June, 1837, there appeared, by his account book, to have been handed over to his successor in office, the following balances in his hands to the following accounts, to wit: 1. To township seven (7) north, range nine (9) west, $196·88, including a balance of $14·43 which was in his hands a year before. 2. To township twelve (12) north, range nine (9) west, $340·17. 3. To township twelve (12) north, range seven (7) west, $794·46, including a balance of $212·47 which was in has hands a year before. 4. To the county of Macoupin, on account of money received on Auditor's warrants, $532·83. In June, 1838, there appeared, by his account book, to have been handed over, as before, the following balances in his hands to the foregoing accounts, in the same order as above stated, to wit: 1. $337·12. 2. $423·82. 3. $798·19. 4. $1111·92, including the foregoing balances. In June, 1839, there appeared, by his account book, to have been handed over, as before, the following balances in his hands to the foregoing accounts, in the same order as before, to wit: 1. $439·27. 2. $613. 3. $795·73. 4. $1142·02, including the balances due as aforesaid in June, 1838. When Miller went out of office in 1839, although notified so, to do according to law, he and his securities failed to pay over to his successor in office, and still refuse to pay the said balances due as aforesaid in June, 1835, 1836, 1837, 1838 and 1839, or to make any legal disbursement of the same; and that he holds the said several sums of money still in his hands, and withholds the payment of the same. The liability of Miller and his securities, respectively, are submitted on the foregoing facts, which are to be considered as applying to each of said cases; and it is consented that the Court may render such judgment as may seem adapted to the premises, and that any party may except to such opinion, and take the same to the Supreme Court by appeal or writ of error for review. It is also agreed that all three

of the causes shall be determined both in the Circuit and Supreme Court on their merits."

Upon this agreement and statement of facts, the Circuit Court found in favor of the plaintiffs in the case of *Samuel Lair, Ezekiel Ross* and *Jesse Rhodes, County Commissioners of Macoupin county, to the use of the Inhabitants of said county, and of the Inhabitants of each Congressional Township therein,* plaintiffs, v. *William Miller,* as principal, and *John R. Lewis, Bela White, John M. S. Smith* and *Samuel Keller,* as securities, defendants, and rendered a judgment against the defendants, on the official bond of 1837, in favor of the beneficial plaintiffs for the gross sum of $12,000, the penalty of the bond, to be discharged by the payment of $968·69 in damages as assessed by the Court, to be paid as follows: to township seven (7) north, range nine (9) west, $256·69; to township twelve (12) north, range nine (9) west, $87·39; to township twelve (12) north, range seven (7) west, $3·98 cents; to Macoupin county, $618·68, together with their costs, &c.

I have been thus particular in setting out the whole of the agreement and proceedings in the Court below, as the case is one of novel impression, and should be settled according to the dictates of justice, and such principles of law as have been decided by the Courts in analagous cases.

The second section of the Act of February 15, 1831, page 13, of the Digest of the Laws relating to common schools and school lands, published in 1835, provides for the appointment of a School Commissioner in these words: " The County Commissioners' Court of each and every organized county shall, at any regular term, proceed to elect and appoint the School Commissioner of the county, and require bond, or bonds, as stipulated in the Act of 22nd January, 1829." The second section of the Act of the 22nd January, 1829, provides, that before the Commissioner shall enter upon the duties of his office, he shall give bond and security in the sum of $12,000, with three or more responsible freeholders, conditioned for the faithful performance of all the duties required by that Act, or which may hereafter be required and

enjoined on him by law; the bond to be drawn in the name of, and payable to the County Commissioners of the county, and their successors in office, for the use of the Inhabitants of the county, and of each and every Congressional township therein; which bond, when broken, may be prosecuted and sued upon, and judgment thereon rendered against the principal and securities, either jointly or severally, for the sum found due, in any Court having jurisdiction thereof, for the use of the inhabitants of any township to whom the same may of right belong. By the 5th section of the Act of February 12, 1835, entitled "*An Act providing for the security of the School Funds*," the County Commissioners' Court of the several counties are required to demand of the School Commissioner and Agent for the Inhabitants of the Counties respectively, a new bond at the next June term of their respective Courts, and to execute a *new bond annually* thereafter. By the 7th section of the same Act, the County Commissioners' Courts are authorized to require the School Commissioners to give additional security, whenever they may deem it expedient for the safety of the money they may have received from the sales of school lands in their respective counties. The duties of the Commissioner consist, generally, in procuring books, in which he is required to make a record of his appointment, and of all the school lands in his county, in a clear and comprehensive manner, designating the townships, ranges, sections, and number of acres in each section; to sell such lands on the petition of the citizens of the proper townships respectively; to report such sales to the County Commissioners' Court, at each regular term thereof; to keep a record of all petitions, signers' names, loans of money, notes and mortgages taken, and the townships to which the same belong; to loan moneys which may come to his hands; see that the payment of the same, with interest, is properly secured; to collect the interest annually, and pay over the same to the trustees of the proper townships; to report to the County Commissioners' Court at each regular term thereof the bonds, notes and other obligations for money or interest on money, or other property, he may

have received; also, a statement of all moneys received, and the person or persons by whom the same was paid, and whether for interest, principal or purchase money; also, all moneys paid or loaned out, and to whom the same was paid or loaned, and the rate of interest payable in each case respectively; and he shall present to such Court annually a statement of all interest paid to him, (keeping the accounts of each township separate), and a summary statement of the manner proposed for the distribution thereof; to apportion the interest received on sales of school lands and on the school fund of the county among the teachers, and to pay over the same to such teachers of schools respectively; to execute a new official bond annually, and to give additional security when required by the County Commissioners' Court; to receive warrants on the State Treasury for the amount due to his county for interest on the school funds loaned to the State; receive from the Treasury the amount of such warrants, and distribute the same among the teachers of schools in his county; and, on being succeeded in office, to deliver all books, notes, bonds, and other papers appertaining to his office, to the clerk of the County Commissioners' Court of the proper county.

These comprise chiefly, if not all, of his duties under the several laws in force from 1835 to 1839, during which time Miller was School Commissioner for Macoupin county.

There is no law, that I can find, which required him, on going out of office, to pay over the moneys in his hands to his successor in office. The only provision I have been able to discover on that subject, is the 8th section of the Act of the 15th of February, 1831, which requires him to deliver the books, notes, bonds and papers in his hands to the clerk of the County Commissioners' Court.

The question now is, in respect to the liability of Miller and his securities on the bond of 1837, upon the agreement as to the statement of facts in the Circuit Court. The breach of the bond is averred to have happened, in consequence of the failure of Miller and his securities to pay over to his successor in office in 1839, the balances due, as stated in his

books, in the month of June, annually, for the years 1835, 1836, 1837, 1838 and 1839 respectively, or to make any legal disbursement of the same, although notified to do so according to law; but that he holds the said moneys still in his hands and withholds the payment of the same.

The annual bonds required to be given by the Commissioners, as I understand the law, impose separate and distinct liabilities upon the securities in each case, which are determined at the end of the year for which they were given, so far as the acts of the Commissioner may be concerned after he has executed a new bond, and entered upon his duties for the succeeding year. Any other construction of the statute would, in my judgment, be fraught with incalculable mischief and hardship. If a security is still to be responsible for the conduct of the principal after the year has expired, for which the bond in his case was executed, he would stand in a very dangerous predicament indeed. The County Commissioners' Court, as in this case, instead of calling to account and removing a defaulting Commissioner promptly for a dereliction of duty, may, if the decision in this case be correct, go on trusting him with balances and additional sums of money from year to year, leaving the securities to rest in security, until the Commissioner is unable to pay, and perhaps rendered so by this improper mode of allowing him to go on from year to year, without a report and without settlement, and then sue the securities, when all opportunity of indemnifying themselves is lost by the delay.

It certainly would not be just or proper after a succession of years had elapsed, and could never have been the understanding of the parties to such bonds, that, after several other bonds had been given successively under the statute, that they were all jointly liable for the misconduct of the Commissioner during the several years for which they were given. When such is ascertained to be the law, there will be but a very few free-holders, I presume, who will be willing to jeopardize their prospects in life by entering into bonds with such conditions.

In the case of *Lord Arlington* v. *Merricke*, 2 Saund. 410,

which was debt on a bond given by a deputy postmaster and his security, the condition of which was that he should be faithful, &c., during all the time he should continue in the office; the words of this condition were restricted in their operation to six months, that time being recited in the bond as the term of the appointment. Here, although by the express words of the condition the obligors were to be answerable for the fidelity of the officer during all the time he should continue in office, the recital was used to qualify and restrain these general words, upon the presumed understanding of the security of the extent of his liability at the time when he assumed it. 2 Pick. 234.

So, in this case, although the condition of the bond, as specified by the statute, does not express the liability of the securities to terminate at the end of the year, still, as the Act of February 12, 1835 directs the School Commissioner to execute a new bond annually, at and after the June term of the County Commissioners' Court in that year, the condition of the bond should, without express words, be presumed to be qualified so as to impose a liability upon the securities for one year only.

The security should never be charged, if it can be avoided, beyond the scope of his undertaking as understood by him at the time when he entered into the contract, nor subjected to injurious penalties after a sufficient length of time has elapsed for him reasonably to suppose that the object for which the bond was given had been fully accomplished, and he, consequently, discharged from all liability growing out of the misconduct of his principal.

In the case of *The Wardens of St. Saviour's* v. *Bostock*, 2 New R. 175, A. B. and C. entered into a bond as sureties of D. and E. The condition recited that D. was appointed collector of the church rate of the parish of St. Saviour, by virtue of which office he was empowered to collect and receive all such monies as were rated and assessed on the inhabitants by virtue of that rate, and for which he was accountable to the wardens of the grand account, and bound the sureties for D.'s accounting for all moneys collected or

received by him on account of the above rate, as also on all
and every other rate or rates thereafter to be made and col-
lected by him. Held, that the parties were only answerable
for D. in that single appointment, and not in his appointment
for the ensuing year. Here there was no limitation of time
in the condition of the bond; but as the office was an annual
one, though not so stated in the condition, the obligation of
the securities was limited by an equitable construction of
their contract, and the probable intent of the parties to it.
*Dedham Bank* v. *Chickering*, 3 Pick. 335; *Peppin* v. *Cooper*,
2 Barn. & Ald. 431; *Leadly* v. *Evans*, 2 Bing. 37; *Union
Bank of Maryland* v. *Ridgely*, 1 Harr. & Gill. 327, 432;
*Kennebeck Bank* v. *Turner*, 2 Greenl. 42; 2 Pick. 235.

In the case of *Farrar & Brown* v. *The United States*, 5
Peters, 372, there was an action of debt brought by the Uni-
ted States, in the District Court of Missouri, against Farrar,
Brown and others, as securities of William Rector, who had
been appointed Surveyor General of the States of Illinois and
Missouri, and the Territory of Arkansas, upon an official bond
dated the 7th of August, 1823, in the penal sum of $30,000,
conditioned for the faithful discharge of the duties of his
office. The defendants pleaded that Rector had performed
his duties as Surveyor General, when it was replied on the
part of the United States, "that at the time of the execution of
the bond, there were in the hands of the said William Rector,
as such Surveyor, to be by him, in the discharge of the du-
ties of his office, applied and disbursed for the use and bene-
fit of the plaintiffs, divers sums of money, amounting in the
whole to $44,780·38, and that the said Rector hath not
applied and disbursed the same or any part thereof, for the
use of the plaintiff, as in the execution of the duties of his
said office, he ought to have done."

Upon this plea, issue was taken, and under the instructions
of the Court, the jury found the issue for the plaintiffs below,
and assessed the damages at $40,456·20, and judgment was
rendered for that sum, and damages accordingly.

It appeared by Rector's account with the Government, as
exhibited by the bill of exceptions, that the money sought to

be recovered of the sureties, was intrusted to Rector at various times, from the 3d of March to the 4th of June, in the year 1823. Rector's commission was dated the 13th of June, 1823, and his official bond as before stated, the 7th of August of the same year, several months after the reception of the money for which his sureties were charged to be responsible.

The Supreme Court of the United States *per* Johnson, J., decided on this state of facts, that there was no difficulty in affirming, that for any sums of money paid to Rector, before the execution of the bond, the sureties would be answerable, if it appeared that Rector still held the money in bank or otherwise, at the date of its execution; that if it was still in his hands, he was up to that time, bailee to the Government, but otherwise, if he had, before that time, become a defaulter, and his offence had been consummated before the giving of the bond; that his securities had not undertaken against his past misconduct, and ought not to be held liable for past dereliction, unless the bond itself had been retrospective in its language; that the sureties ought therefore, to have been permitted to prove the actual state of the facts, so vitally important to their defence, whether at the time they became his sureties, he was bailee to the Government, or had before that time become a defaulter. For refusing to let the defendants into such proof on the trial in the District Court, the judgment was reversed.

I think the correct doctrine, as to the liabilities of securities, well settled in the foregoing recited case, and applicable to the case now under consideration. The securities of Miller, in the bond of 1837, undertook to answer for a faithful application of the money in his hands, at the date of the execution of their contract, and for a proper performance of his duties as School Commissioner, for one year only; at the expiration of which time they knew that, according to the provisions of the statute before recited, he would be required to execute a new bond for the succeeding year, and so on with his other securities, successively. For any defalcation or

dereliction of duty during that year, they are still responsible, and may be sued upon their bond, and subjected to the payment of all damages occasioned by such misconduct, they having the right, at the same time, to show by evidence, that no such misconduct as may be imputed to their principal, happened during the year for which they were security.

Further than this, in my opinion, they ought not to be held responsible. In this case, the only evidence against the plaintiffs in error, are the accounts of the Commissioner as exhibited by his own books, which are not controverted by adverse testimony. They show that at the time of the execution of the bond in June, 1837, there were in Miller's hands, the following balances, referable to the following accounts, to wit: 1. To township seven (7) north, range nine (9) west, $196·88, including a balance of $14·43, which was in his hands the year before. 2. To township twelve (12) north, range nine (9) west, $340·17. 3. To township twelve (12) north, range seven (7) west, $794·46, including a balance of $212·47, which was in his hands the year before. 4. To the county of Macoupin, on account of moneys received on Auditor's warrants, $532·83, making in all the sum of $2091·24. His books also show that all this money, with additional amounts, was in his hands at the time of the execution of the bond in June, 1838, and transferred to the accounts of the year next succeeding June, 1838. Where, then, is the evidence to prove that Miller was a defaulter during the time for which the securities became liable by the bond of 1837? None whatever. The statements upon his books must be taken altogether, as well those which make for him and his securities as those which operate against them, or rejected altogether. And if rejected, where is the evidence to show that Miller had any money whatever in his hands as such Commissioner? None. My opinion is, that if the facts be, as stated by the Commissioner, in his books of account, as exhibited by the agreement, that suit should have been brought upon the last bond given in June, 1839, with the privilege to his securities on that bond to show by evidence,

that the whole or a part of his defalcation occurred before the commencement of their liability by the execution of their bond in June, 1839. And so in regard to all the other bonds, if suit should be brought upon them for supposed liabilities, during the years for which said securities are respectively responsible. In this way, and in no other, in my judgment, can complete justice be meted out to all; and all the securities will be satisfied of the propriety of holding each set responsible for the conduct of their principal, during the particular year for which their bond was given, as the more equitable rule, notwithstanding much inconvenience and loss may be the consequence of the neglect of the County Commissioners' Court to sue in a reasonable time, when all the facts are fresh in the recollection of the parties concerned, and before all opportunity of indemnifying themselves by recourse upon their principal, may be lost by his insolvency.

*Judgment affirmed.*