## THOMAS KENNEDY *vs.* JOHN DUNCKLEE.

An execution, issued while the judgment debtor is imprisoned under a commitment on a prior execution upon the same judgment, is void; and a sale of property under it, though made after the debtor's discharge from imprisonment, and to a purchaser without notice, passes no title.

WRIT OF ENTRY, dated October 1st 1851, to recover a lot of land in Broad Street in Boston. Plea, *nul disseizin.*

The case was submitted to the court on the following facts : The demandant, on the 12th of November 1850, was and for a long time had been in possession of the demanded premises, and the owner of the equity of redemption thereof. On the 9th

of March 1850, the city of Boston recovered judgment against the demandant in the court of common pleas for the county of Suffolk for one hundred and sixty seven dollars damages, and ninety eight dollars and seventy two cents costs of suit. On the 15th of March 1850, execution issued on this judgment, and was put into the hands of a deputy sheriff, who on the 25th of March 1850, by virtue of this execution, and before any property or estate of the demandant had been levied on, arrested the demandant and committed him to jail, and returned these facts on the execution. The demandant on the same day gave bond for the liberty of the prison limits, and on the 24th of June following surrendered himself to the jailer, and was again committed to jail, where he remained until the 12th of November 1850.

On the 11th of November 1850, a petition for the discharge of the demandant, presented to the mayor and aldermen of Boston, was by them referred to the mayor, with authority to consult the city solicitor as to his opinion whether the petitioner ought to be discharged, and if he ought, to discharge him. The mayor consulted with the city solicitor and proposed to him to discharge the demandant, but did not order him so to do. The city solicitor objected, and refused to discharge the demandant; but, on the 12th of November 1850, gave notice in writing to the jailer that the city would no longer hold itself responsible for the demandant's board. On the same day, the jailer, in consequence of this notice, discharged the demandant from jail. Before such discharge, the demandant was asked by one of the officers of the jail to sign a book claiming support as a pauper, but absolutely refused to do so, and requested permission of the jailer to pay for his board while in jail; but the jailer declined to receive the money, and told the demandant that he was not authorized to receive it for that purpose, and that he had no claim on him for his board, and thereupon discharged him as aforesaid.

On said 12th of November, before the demandant's discharge from jail, the city solicitor took out an alias execution on said judgment against the goods and estate of the demandant; and

the deputy sheriff, on the 13th of November 1850, seized and took all the right in equity which the demandant had to redeem the demanded premises; and on the 9th of April 1851 levied the alias execution on the demanded premises, and on the next day gave the demandant notice in writing of such taking and of the proposed sale of the demandant's right in equity in order to satisfy the alias execution; and on the 17th of May 1851 caused such right in equity to be sold by auction to the tenant, he being the highest bidder therefor, and executed and delivered to him a deed thereof, by virtue of which the tenant entered upon and took possession of the demanded premises, and has ever since continued in possession thereof.

The arguments were had at November term 1853.

*L. Mason*, for the demandant.

*P. W. Chandler & M. Chamberlain*, for the tenant.

METCALF, J. The question on which this case must be decided is, whether the alias execution, on which the sale was made to the tenant, was irregular and void, or only erroneous and voidable. If it was void, the tenant acquired no title under it, and the demandant is to recover. If it was only voidable, the tenant acquired title under it, and he is to have judgment. For it is a settled doctrine of the common law that the sale or assignment, by a sheriff, of the goods and chattels of a defendant, taken on a writ of *fieri facias*, conveys an indefeasible title to the possession of the specific articles sold or assigned, unless the writ be void, or the goods taken were the property of a stranger. Sewell on Sheriffs, 260. 2 Tidd's Pract. (1st Amer. ed.) 936. *Jackson* v. *Cadwell*, 1 Cow. 644. *Woodcock* v. *Bennet*, 1 Cow. 737. The same is doubtless true of the sale, by an officer, of an equity of redemption, and of a levy by him on real estate, under our statutes, if the debtor does not redeem.

When a judgment, on which an execution was regularly issued, is reversed, or when a satisfied execution, which was only erroneous and voidable, is set aside, the property which was taken from the judgment debtor is not restored to him, but restoration is made to him of the amount of money for which the property was sold. There is an exception to this rule,

when property is delivered to the judgment creditor himself, on a writ of *elegit*. In that case, the property is restored to the judgment debtor, upon a reversal of the judgment. And when an outlawry is reversed, the goods which may have been sold on a *capias utlagatum* are restored. *Goodyer* v. *Junce*, Yelv. 179. Bac. Ab. Error, M. 3; Execution, Q. 2 Tidd's Pract. (1st Amer. ed.) 1137, 1138. But if a writ of execution is void, a purchaser at a sale under it obtains no title to the property so purchased, and the judgment debtor may reclaim it. On this point, there is no room for doubt. The doubt arises on the question — when is a writ of execution void, and not merely voidable? Upon this question, *dicta* may be found, and even decisions, which cannot be reconciled. But we find enough, in the adjudications of our predecessors in this court, to settle the present case. And we are satisfied that those decisions were made on sound principles. Those principles are, *first*, that when a judgment is satisfied or discharged, any execution subsequently issued thereon, and all proceedings under it, are void; as much so as an execution and the proceedings under it would be, if it were issued without any judgment at all to support it : *Second*, that when the amount of a judgment, on which an execution has issued, is paid to the creditor or to an officer, all further proceedings under the execution are void. Other courts have made similar decisions.

In this commonwealth, the commitment of a debtor in execution is not an absolute satisfaction of the judgment. But it is a satisfaction *prima facie*, and until defeated by subsequent events. While the debtor is in prison, no other measures against him can be taken to obtain payment, (3 Bl. Com. 415,) besides that which is provided by the Rev. Sts. *c.* 98, § 25; namely, by suing the judgment, attaching the debtor's property by the trustee process, and discharging him from prison within seven days after service of the trustee writ. *Twining* v. *Foot*, 5 Cush. 515. Imprisonment, while it continues, is a satisfaction, unless there be some statute provision to the contrary. *Sharpe* v. *Speckenagle*, 3 S. & R. 465–467. *Bowrell* v. *Zigler*, 19 Ohio, 366. *Rogers* v. *Marshall*, 4 Leigh, 432. *Rockhill* v. *Hanna*, 15

How. 196. If the creditor, in any other way, discharges his debtor from imprisonment, the judgment is as effectually satisfied in law, as it is when the debtor pays the amount thereof in money, or when his property is sold on execution. And in *King* v. *Goodwin*, 16 Mass. 63, where a creditor, after committing his debtor on one execution, and discharging him from imprisonment, took out another execution and levied it on the debtor's real estate, it was decided that the last execution was void, and that the levy under it conveyed no title to the estate levied on. In *Loomis* v. *Storrs*, 4 Conn. 440, where a creditor committed his debtor in execution, and then discharged him from prison and levied the same execution on his real estate, it was held that the levy was void; the judgment having been previously satisfied. In *Hammatt* v. *Wyman*, 9 Mass. 138, where one of two execution debtors paid the amount of the judgment to the creditor's attorney, and took his receipt and discharge, without having the payment indorsed on the execution, and then caused the execution to be levied on his co-debtor's goods for half of the amount of the judgment, and bought those goods at the sale, it was decided that he acquired no title to them; the execution being in law discharged, and the judgment satisfied, before the sale. And in *Den* v. *Roberts*, 11 Ired. 424, where the sum due on a *fieri facias* was paid to the sheriff, and he afterwards sold land under it, it was decided that the sale was void, and that the purchaser, though a stranger without notice, gained no title. See also, to the same effect, *Hunter* v. *Stevenson*, 1 Hill's (S. C.) Rep. 415. *Thrower* v. *Vaughan*, 1 Rich. 18. *Swan* v. *Saddlemire*, 8 Wend. 676. *Wood* v. *Colvin*, 2 Hill's (N. Y.) Rep. 566. We have seen a few cases, in which it was held that though the judgment creditor, or a third person having notice, cannot hold property set off or purchased on a satisfied execution, or on an execution issued on a satisfied judgment, yet that it is otherwise in case of a purchaser without notice. But, in our judgment, there is no legal ground for this distinction. A purchaser of stolen goods, whether he had notice of the theft, or not, must surrender them to the owner; because the seller had no title and could convey none. And as we hold

such an execution as above mentioned to be void, we must also hold, with Mr. Justice Butler, (1 Rich. 21,) that "no conveyance can be good, which rests upon that which is null and void." We therefore cannot distinguish the present case from that of *King* v. *Goodwin.* While the demandant was in prison on the first execution, on which the officer had returned the commitment, the judgment was *prima facie* satisfied; and at the time of the issuing of the alias, nothing appeared, and nothing existed, to defeat that satisfaction and render the demandant's property liable, under chapters ninety seven and ninety eight of the revised statutes, to be seized and applied in payment of the judgment. He had not escaped; nor taken the poor debtors' oath; nor been discharged by the judgment creditors, either on their suing the judgment and summoning a third person as his trustee, or on his demand of support as a pauper; nor had he been discharged by the jailer, on the creditors' omission to secure or advance payment for his support in prison. The *prima facie* proof, therefore, that the judgment was satisfied by the commitment, remained unrebutted. Nor is it, even now, rebutted by any fact that is shown to have occurred since. It appears, indeed, that the demandant, after the issuing of the alias, left the prison. But whether he thereby committed an escape in law, or was discharged by the creditors' consent, we cannot learn from the agreed facts. If he was discharged by their consent, the judgment remains satisfied, not merely *prima facie*, but indefeasibly. Whatever may have occurred, after the alias was issued, to defeat the *prima facie* satisfaction of the judgment, it is clear that, at the time of its issuing, the judgment was satisfied, for the time being at least, and that the alias, if it could ever have been lawfully issued, having been issued sooner than the law permitted, was void *ab initio.* See *Penniman* v. *Cole,* 8 Met. 496, and *Briggs* v. *Wardwell,* 10 Mass. 356.

The tenant, in support of his title under the sale, relied on the decision of Lord Hardwicke, in the case of *Jeanes* v. *Wilkins,* 1 Ves. Sen. 195. And if we were bound by that decision, it would be conclusive in the tenant's favor. In that case, while

a debtor was in prison on a *capias ad satisfaciendum*, a writ of *fieri facias* was taken out, on which the sheriff seized and sold a leasehold estate of the debtor, and the purchaser assigned it to a third person. It does not appear, from the report, what parties raised the questions in the case. But it does appear that one of those questions was, " whether the sale by the sheriff was regular, by virtue of this writ of execution, so as to convey a good estate, in point of law, to the defendant Cole," (the assignee of the purchaser,) " supposing the whole transaction fair." Lord Hardwicke is reported to have said: " To avoid the sale and title of the defendant, it must be proved that the *fi. fa.* was void and conveyed no authority to the sheriff; for it might be irregular, and yet, if sufficient to indemnify the sheriff in an action of trespass, he might convey a good title, notwithstanding the writ might be afterwards set aside. It is said that by law, during the existence of the *capias*, and the person in custody, a *fi. fa.* ought not to be taken out; and certainly it ought not. But yet the *fi. fa.* was not void; and the sheriff might justify taking this leasehold by that writ; and so may the purchaser under the sheriff, who gains a title. Otherwise, it would be very hard, if it should be at the peril of a purchaser under a *fi. fa.* whether the proceedings were regular or not." Neither this reasoning, nor the citation of the case as an authority, in *Tayloe* v. *Thomson*, 5 Pet. 369, convinces us of the soundness of the decision. For we find that no doctrine is more firmly established than this; namely, that an officer may justify acts done by him under a process that is void, unless it appears on its face to be void, as well as acts done under a process that is voidable and has been avoided. *Parsons* v. *Loyd*, 3 Wils. 345. *Gosset* v. *Howard*, 10 Ad. & El. N. R. 454. *Allison* v. *Rheam*, 3 S. & R. 139. Hammond's Nisi Prius, 49. In *Barker* v. *Braham*, 3 Wils. 376, Chief Justice De Grey said: " A sheriff or his officers, or any acting under his or their authority, may justify themselves by pleading the writ only; because *that* is sufficient for their excuse, although there be no judgment or record to support or warrant such a writ." It does not follow, then, that because a sheriff, in an action of trespass

against him, may justify his act in selling property on an execu‧ tion, therefore the sale conveys to the purchaser a title to the property sold. If that were a legal inference, all sales under void process, if not void on its face, would be as valid as sales under process that is voidable only. And we cannot see that it is any less hard for the defendant in an execution to lose his goods which are sold thereon after the judgment is paid or satisfied, than for the purchaser of them to lose his bargain. 1 Cow. 735.

It may be well to state, in this connection, that if payment of an execution is made to an officer who holds it, or if the judgment creditor discharges it, and gives the officer who holds it notice of the discharge, the officer cannot justify a subsequent commitment of the debtor, or seizure of his property, under the execution, but thereby becomes a trespasser. Sheppard's Epitome, 551. *Barker* v. *St. Quintin*, 12 M. & W. 441. *Gregory* v. *Slowman*, 1 El. & Blackb. 360.

*Judgment for the demandant.*