Chief Justice Picibeb i-son
deliv<aod the opinion of the Court.
Juduo Nicholas did not sit in this caso.
The plaintiffs sued the defendant as surviving partner of William P Lee, secretly trading (as the declaration avers) in the style of W. P. Lee, in buying and selling hogs."
The suit is founded on a note for $27S9 56 signed 11 Wm. P. Leaf dated December 22nd, 1818; made payable to T. Stewart and Arthur L. Campbell, and endorsed by them to the plaintiffs. The note was given in consideration of bogs, which had, some short time prior to the date of the note, been sold to Lee by the plaintiffs.
The defendant filed four pleas:—
1st. JVon est factum, 2nd. JVi/iiZ debet 3rd. The statute of limitations; and 4th, a special plea in bar avering that, prior to the impetration of the writ, "the plaintiff had sued Lee alone on the note; obtained a judgment against him, and imprisoned him untlpr a ca. sa. issued on the judgment.
Demurrers to the 2nd, 3rd, and 4th pleas were .-sustained by the court. And a jury, sworn to try the issue of fact concluded on the 1st plea, having *417 found a verdict for the defendant, the court - overruled a motion for a new trial, and.rendered a judgment according to the verdict. To reverse that judgment, tins writ of error is prosecuted.
To debt ou specialty neiV ther statute of limita tior-s wt nihil debet a good piea.
Imprisonment of one obligor does not operate as exoneration of himself or co-obligor without aclual satisfaction and release.
Tiie plaintiffs insisted that the circuit court erred in overruling their motion for a new trial. 1st, because, (as they allege) it erred in admitting evidence objected to by them; and 2nd, because the verdict was not authorized by the proof.
The defendant, denying that there was any error, to the prejudice of the plaintiffs, says that the court erred in sustaining the-demurrers to his 2nd, 3rd, and 4th pleas; and that, therefore, the judgment is right, even if the evidence did not justify the verdict, or if the court er.red in admitting irrelevant testimony.
Before we consider the errors assigned by the plaintiffs, we will, therefore, dispose of the question now raised on the pleas.
Neither of the pleas we are now considering, denied the alleged partnership, or the consideration as charged, or the original liability of the defendant, upon the note. Wherefore, as the note, though not sealed, had all the effect of a specialty, it is evident ■that neither nihil debet nor the statute of limitations, was an available defence to the action. ri he 4th plea is also, we think, insufficient, though not so obviously so as either of the other two.
The imprisonment of Lee, which seems to have been intended as the gravamen, could not, of itself» and alone, bar the action. The mere caption and imprisonment of Lee did not satisfy or release the judgment, and could not, therefore, have operated either as an actual or legal exoneration of himself, or of his co-obligor. Nothing but actual satisfaction, or a liberation of Lee by the plaintiffs, or a release to him in fact, or in law, could have exonerated the defendant from any joint liability which pre existed. (Cro. El. 573. 5th Co. 86. Gow, on Pur ‘ 357, Mar. pa.) If Lee had escaped, or liad be¡ discharged, the defendant’s liability would not hav been thereby destroyed, or impaired. (Cro. Kl. 470, 555, 573, 5th Co. supra.)
Obligation of partners, at law,joint; in ■equity joint arul several.
Judgment vs. one partner, merges the pre-existing joint liability of all the part ners. Merger of the contract as to one jointly bound operates as a mer ger as to all jointly liable.
But, the plea may, nevertheless, he good, if the judgment against Lee, merged the whole obligation. The judgment on the demurrer, therefore, presents another matter for consideration.
If the defendant were liable as a dormant partner, and the note be binding upon him, tlie obligation was joint. Although partners are considered, in equity, as jointly and severally bound, yet their legal liability is purely and dearly joint, and not several. Cow, 201, M. P.; 210, Ibid; 259, Ibid. rlhe reason of this distinction between the character of partnership obligations, in equity and at law, is that the lex mercaloria, which considers such liabilities as joint and several, has been adopted in equity without limitation, but has not been permitted in a court of law to overrule or change the common law rule, founded on the formal character of partnership obligations. It seems to be undeniably established, that, in a suit ex contractu, a partner may plead in abatement the non-joinder of his co-partners. This he could not do, were the obligation several as well as joint, in a court of law.
It must be admitted to be consistent with principle and analogy, that a judgment against one in a suit on a joint contract, will merge the whole pre-existing joint liability. For surely, the individual liability of the party (defendant) to the judgment, must necessarily have b.een merged in the judgment, transit in rem judicatura.” And it is undoubtedly a general rule, subject to but few, if any exceptions, that whatever extinguishes or merges the legal and binding liability of one joint contractor, extinguishes or merges the like liability of all who were jointly bound with him in the contract. If a judgment be obtained against one obligor in a suit on a joint contract, can another, suit be maintained against him on the same contract? Can a suit be maintained' against his coobligors? May they not plead the non-joinder of the omitted obligor in abatement? If they be all sued together, may not the merger of the obligation by the former judgment against one of them,.entitle them to a non-suit? See Cro, J. 73; and I Saunders’ Reps. 153; N. I. 291, f. g,
*419 Though it has been frequently said by judges and lawyers, that the supreme court of the United States, in trie case of Sheeley vs. Mandeville, VI Cranch, 253, declared that a judgment against one joint obligor, does not so merge or change the character of the com tract as to bar a suit upon the same contract against his co-obligor, yet, a careful examination of the opinion in that case, will, we think, shew that no such doctrine was therein settled, and no such point decided. Judgment having been rendered against R. B. Jameson on a note signed UR. B. Jameson,” another suit was afterwards brought on the same note against Mandevilie, as a dormant partner, trading in the style of “/£. B. Jameson,” Mandeville pleaded the judgment against Jameson- in bar of the action against himself; and concerning that plea the supreme court said: “Were it admitted that this judgment bars an-action against R. B. Jameson, the enquiry still remains, it Mandeville was originally bound, if a suit could be originally maintained against him, is-the note as to him merged in the judgment?” “The doctrine oí¡ merger (even admitting.that a judgment against one of several joint obligors would terminate the whole obligation, so that a distinct action, could not afterwards be maintained against the others, which is not admitted), can be applied only to a-ease 111 which the original declaration was on a joint covenant, not to a case in which the declaration in the. first suit was on a sole contract.” “And it appears to-the court, that this claim is not barred by any technical rule of law, since the proceedings in the first action ivere instituted upon the assumpsit oj Jameson individually.”
Now it will be at once perceived, that though the* court may have intimated an impression, it gave no judicial opinion on the point we are now considering. That point was not considered by the court as necessarily involved in that case.
But not only principle and analogy but a formidable array of autnorities may be opposed to the obituT intimation in the case of Sheeley v. Mandeville. See 1 Chitty 30; Com. Dig. K. 4; 11 Strange, 820; Robertson vs. Smith, XV111 Jonnson, 459; Penny vs. Mar *420 tin, IV Johnson’s Chy. Rep. 566; Willings et al. vs. Consequa, I Peters; C. C. Reps. 301,
tfúflgment vs. one, upon a contract, upon its iace, liis sole individual contract, and as such sued u¡ - on , no bar to subsequent action upon it in its true character of a joint contract.
In the case of Sheeley vs. Mandeville, counsel admitted, and the court seemed virtually to concede, that a judgment against one obligor, on the- joint contract, would bar another action against him on the same contract, because, as to him at least, the contract had merged in the judgment. What contract merged ? The contract as it was — tiie contract as sued on — the joint contract, Could it be changed from joint to several by the judgment ? Would not a destruction or suspension of the cause of action as to one joint obligor, by the voluntary act of the obligee, destroy or suspend the whole 'cause of action as to all the joint obligors ?
We would be inclined to think that, according to the strict rules and analogies of the common law, a judgment against any one obligor on a joint contract, would bar any other suit on that contract.
But whether this teciinical rule is impugnahly entrenched behind principle and authority, or whether the less analogical but more liberal doctrine of the mercantile law, adopted in equity, might yet be adopted by this court, we are not required in this case to decide finally and conclusively.
The plea does not shew that Lee was sued on a joint contract; and we are bound to presume that, in the suit and judgment against him, the contract was-treated and considered as his own individual obligation. As in the case of Sheeley vs. Mandeville, his name alone appeared on the note — the undertaking to pay was in the singular number (“I”) — it would seem that Colmesnil, if a partner at all, was not then known to have been such. In such a case, (of dormant partnership) when the contract seemed on its face to be sole, and in that character had, been prosecuted to judgment against the only apparent obligor, a subsequent suit upon it in its true character ns a joint contract would not be barred by the prior judgment upon a contract considered, described and appearing as essentially distinct and different. And in this view we are sustained by the direct and positive decision of the supreme court in the case of of Sheeley vs. Mandeville.
Quero — whethor judgment, °n a contract b^be solo,*0 when it was known to 'ofút ^rould'8 bar future action against
Error to admit evidence ^ils no, relevancy to' the matter in contcsl;
The legal effect of the judgment cannot be more exten si ve than the contract as declared on, and as it was believed to be. If the latter be described, and be understood to be sole, the former cannot be joint. Tbe sole contract, as described and as considered, was merged ; but a joint contract not exhibited — not adjudicated on — not known to exist — was not embraced or affected by such a judgment.
“ Even those acts done by a creditor, suSh as selecting one partner, accepting new- bills &c. which arc usually held to operate the discharge of the other partners, will not liberate air unknown dormant partner, if they were done by the creditor during the time of his concealment.” Gow, 194.
We need riot decide whether an action on a contract, known by the creditor to be joint when he obtained a judgment on it as a sole contract, would be barred as to all or any of the obligors by judgment on a declaration describing the obligation as sole, For in this case it does not appear that the plaintiffs, when they obtained their judgment against Lee, knew that the defendant was liable on the note ; and it even yet remains to be decided whether or not he shall be deemed a party to it.
Wherefore, we conclude that the 4th plea was insufficient.
We will now, therefore, proceed to consider the grounds for a new trial.
We have not been able- to perceive any relevancy in the bill of exchange and bill of sale, which tire circuit court, notwithstanding the objection of the plaintiffs, permitted the defendant to read t.o the jury. They could have had no possible application, unless, in some degree, they tended to impeach the credibility of Churchliill, who had been examined as a witness for the plaintiffs.
Churchliill, after stating that, the defendant virtntually admitted, in a conversation with him some years after the date of the note sued on, that he was a partner with Lee in the purchase of the hogs foiwhich- the note was given, swore that the defendant *422 also tolcl him that he had, by a timely sale of his interest to Lee, extricated himself from a perilous-speculation — that he made about $600 by his sale to Lee, but that, having sued him at New Orleans for the $600, lie (Lee) gave him a bill of sale for two slaves, whim, as was afterwards ascertained, did not belong to him.
dormant partner at (late ■ f note (riven by public partner, bound. One ..urtner can bind another by note not under seal, notwithstanding the act of IS 12.
*422 The bill of exchange was for $2050, drawn in favor of “Honoré and Colmesnil,’’pViarch the 18th, JSÍ9. -The bill of sale was for two'slaves transferred to "J. Jl- Honoré and Colmesnil” May the-21st, 1819, for $1400. The bill of exchange had been protested on the 20th of May, 1819, for nonpayment. The purpose for which these documents were used as evidence was, we presume, to show that Churchhill was mistaken when he swore that Colmesnil had told him that he had sued Lee for about $600, and had obtained a bill of sale for two' slaves therefor, and, by thus discrediting his memory, impair the force of his testimony, as to the conversation concerning the partnership.
But how such documents could, in any degree, tend legitimately to authorize such a deduction, we are at a loss to -understand. There is nothing to identify or connect the transaction alluded to by Churchhill with the bill of exchange, or with the bill of sale; and even if any connection could be reasonably inferred, (which is not admitted,) the bill of sale is no prooí against the plaintiffs, (who were strangers to it,) that the true consideration was-$1400, or that the $600 formed no part of it. But could they have all the effect claimed for them in these particulars by the defendant, surely they could not be admitted as legal or pertinent evidence to prove that the defendant did not tell Churchhill what he swore that he had said to him, or that Colmesnil had not sued Lee for about $600.
We are, therefore, of opinion that the circuit court erred in admitting the documents.
Whether the facts, as presented to the jury, would be sufficient to sustain the verdict, would, if it were proper how to respond to it, be a more important question.
He who is to participate i the profits o purchase, a partner.
(Dormant partner not bo.und to give notice of dissolution.) If dissolution prior to date of note evidencing debt of partnership, he is bound by the original assumpsit. If partner ostensible unless note given in the style of the firm to be considered the individual note of him who executes, it.
If, at the date of the note, the defendant was a dormant partner, the note may he obligatory on him. One partner may bind his co-partner by contract without a seal, even though the written evidence of the contract be entitled, in consequence of the statute of this state of 1812, to the effect of a sealed instrument. ■
If, when the hogs were bought and the note was given, the defendant was, by contract with Lee, to be a participant in the profits of the purchase, he should, inter alios, be deemed a partner.
If he had been a dormant partner when the hogs were bought, and had ceased to be a partner prior to the dale of the note, he would doe liable only on the original assumpsit, and would not be suable on the note, for a secret partner (not being trusted) is not bound to give notice of dissolution; and an authority already quoted shows that the note could not (were he an unknown partner) extinguish his preexisting parol liability.
But if the defendant was not only a partner, but 'was an ostensible one, and known as such by the plaintiffs, the note' should, prima facie, be deemed the individual obligation of Lee, given in satisfaction of the partnership debt, unless there had been possitive proof that the conventional or practical style of the firm was “W. P. Lee.”
But no such deduction would be allowable unless the defendant was, at the date of the note, known to be a partner.
The foregoing are the principal criteria for testing tlie plea of non est factum. But as the judgment must be reversed for error in admitting impertinent ■testimony, and there may be a new trial on the merits, we would deem it premature and extra-judicial, to intimate now how far the facts before the jury did or did not authorize the verdict and judg-ment according to the principles herein suggested.
These principles have been laid down to aid the circuit court and the parties in making such a dis-. position of this controversy as may be just, satisfac-. •lory, and final.
Richardson and Hoggin, for plaintiffs; Denny and Duncan, for defendant.
Judgment reversed, and. cause remanded for a new trial.