## Esbon G. Fuller and others v. George W. Bowker.

Imprisonment on an execution in replevin does not fall within the prohibition of imprisonment for debt in the Constitution—*Art. VI.* § 33 — and statute—*Comp. L. Ch.* 166—of this State.

But at common law a *capias ad satisfaciendum* could not issue on a judgment in replevin, and therefore can not be issued on such a judgment rendered by a Circuit Court of this State, there being no statute of the State providing for it, and English statutes being repealed.

FULLER v. BOWKER.

If one is arrested on a void execution, and gives bond for the jail limits, the bond is void, and he can not, in an action for false imprisonment, recover damages for remaining in the county according to the terms of the bond.

Declaration for false imprisonment with allegation of damage that the plaintiff "was greatly hindered and prevented from performing and transacting his necessary affairs and business," "and from engaging and embarking in business which he might and would otherwise have embarked in." Plaintiff proved that his business was collecting and securing claims, and was allowed, under objection, to show that his business occasionally called him out of the county, and that he was applied to twice to go out of the county after his arrest and after he had given bond for the jail limits. *Held*, that the averments in the declaration did not warrant this evidence of special damages.

*Heard April 8th. Decided April 28th.*

Error to Branch Circuit.

The action was brought by Bowker against Sylvester P. May and his attorneys, for false imprisonment in causing Bowker to be arrested on a *capias ad satisfaciendum* issued upon a judgment rendered in said Circuit Court, in favor of May against Bowker, in an action of replevin.

The first count of the declaration was in the ordinary form, averring no special damage. The second count was as follows:

"And also, for that the said Sylvester P. May, Esbon G. Fuller, and Caleb D. Randall, on the first day of May, one thousand eight hundred and sixty, with force and arms made another assault on the said George W. Bowker, to wit, at Coldwater in said county of Branch, and then and there beat, bruised and ill-treated him the said plaintiff, and then and there imprisoned him, the said plaintiff, and kept and detained him in prison there without any reasonable or probable cause whatsoever, for a long time, to wit, for the space of sixty days then next following, contrary to the laws of this State and against the will of the said plaintiff. By reason of which said several premises he, the said plaintiff, was greatly hindered and prevented from performing and transacting his nesessary affairs and business, by him during that time to be performed and transacted, and was also prevented and hindered from engaging and embarking in business which the plaintiff

might and would otherwise have engaged and embarked in, and which would have brought great profits to the said plaintiff; and also thereby he, the said plaintiff, was forced and obliged to and did necessarily pay, lay out and expend a large sum of money, to wit, the sum of two hundred dollars, in and about endeavoring to become released from such imprisonment, and in and about the support and maintenance of himself and family during such imprisonment, to wit, at Coldwater aforesaid, and all to the great damage of the said plaintiff of two thousand dollars, and therefore he brings suit, &c."

Upon the trial, David N. Green was called as a witness on the part of the plaintiff, and, upon his direct examination, testified in substance as follows:

"In the year 1859 and 1860 I was acting sheriff of the county of Branch. About the first day of May, 1860, I arrested the plaintiff Bowker on an execution which I have here. Mr. E. G. Fuller (one of the defendants) gave me the execution. He told me he wanted I should collect it, and, if Bowker couldn't pay it, put him in jail. He (Fuller) said he thought Bowker would pay it if he found I was going to arrest him. I did arrest him. I can't say how long I had him in custody; it was until he was discharged by the Court."

On his cross-examination he said:

"The directions given me by Mr. Fuller about serving the writ were given by way of explanation of the writ, telling me what the writ required me to do. I wanted explanation in regard to it. He said I could let it run, but it would be at my own risk if I did. I did not put Bowker in jail. After I arrested him he went away to see his counsel. I arrested him by telling him I had a writ for him, and he might consider himself arrested, and showed him the writ.

"On reflection, I don't know certainly that I showed him the writ. I didn't shut him up after that at any

time. He went where he pleased, except there was an understanding between him and me that he shouldn't go out of the county. So far as regarded any forcible or actual restraint, he went where he pleased. I never took him to the jail. I have stated, as far as I now recollect, all that I did by way of arresting him."

On his direct examination resumed, he further testified as follows:

"It was in Coldwater, at John Root's office, that I saw Bowker, and I think we went down stairs together before I told him what I wanted; at least we went away from where other persons were. The reason I didn't commit him to jail was, that after he had been to see counsel he gave me a bond. After he executed that, I suffered him to go at large. I don't know when, in reference to the time of arrest, the bond was given."

The *capias ad satisfaciendum* was then given in evidence, and the bond offered. It was an ordinary bond for the jail limits, reciting the arrest on the said capias. The defendants objected to its reception, but the objection was overruled, and exception taken. The plaintiff also proved, under objection, an order made by the Circuit Court setting aside the capias as irregular and void.

Alvin T. Lamphere was then called and sworn as a witness on the part of the plaintiff, and testified that the plaintiff's business, prior to May 1st, 1860, had been that of constable and collecting and securing claims.

The plaintiff's counsel then asked the witness whether the business in which the plaintiff was engaged involved the necessity of his going outside of the county; which question was objected to by the defendants' counsel, but the objection was overruled by the Court, and exception taken.

The witness answered: "I know that it did, at times, call him out of the county."

The plaintiff's counsel then asked the witness to state

whether the plaintiff was applied to to go out of the county and do business after his arrest by the sheriff; which question was objected to by defendant's counsel, and such objection was overruled by the Court; and the witness answered: "I know he was applied to twice after his arrest to go out of the county."

The evidence being closed, the counsel for defendants requested the Court to instruct the jury, among other things, as follows:

"That in actions of replevin, a writ of execution, commonly called a *ca. sa.*, may lawfully issue, and that therefore, in this case, the execution proved to have been issued upon the judgment recovered in the replevin suit by Sylvester P. May against George W. Bowker, was properly and lawfully issued.

"That if the jury are satisfied from the evidence that, at the time the bond for the jail limits was given by Bowker, he was not actually in custody, but had been permitted by the sheriff to go at large, and was at large, the bond had no legal force, and the plaintiff was under no obligation to remain within the jail limits.

"That if the sheriff, after having arrested the defendant in the execution, permitted him to go at large, it was a voluntary escape, and the sheriff had no power afterwards to control him, or require him to give a bond; hence he can recover for the technical arrest only."

These requests were denied, and the jury were instructed:

That the execution which the plaintiff claimed, and which the defendants admitted, was issued on the judgment in favor of Sylvester P. May against George W. Bowker, the plaintiff in this action, could not be issued on such a judgment, although such judgment is valid. That it is prohibited by the Constitution and laws of this State.

That the validity of the bond which was given by said Bowker to the sheriff, was not a question for the jury. Nor was it a question for the jury whether Bowker

was under obligation to remain within the jail limits or not.

The jury under this charge returned a verdict for the plaintiff of seventy-five dollars.

Among the errors assigned in this Court, were *first*, the reception of the bond in evidence; *third*, admitting Lamphere's evidence that Bowker's business did, at times call him out of the county; *fourth*, admitting the evidence of the same witness that Bowker was applied to twice after his arrest to go out of the county and do business; *fifth*, holding the *ca. sa.* to be void; *sixth*, refusing to instruct the jury that if they were satisfied from the evidence, that at the time the bond for the jail limits was given by Bowker, he was not actually in custody, but had been permitted by the sheriff to go at large, the bond had no legal force, and the plaintiff was under no obligation to remain within the jail limits; *seventh*, instructing them that the validity of the bond which was given by said Bowker to the sheriff was not a question for the jury; nor was it a question for the jury whether Bowker was under obligation to remain within the jail limits or not.

*E. G. Fuller*, in person, and *T. M. Cooley*, for plaintiffs in error.

*Upson & Thompson*, for defendant in error.

CHRISTIANCY J.:

Can a *capias ad satisfaciendum* be issued on a judgment for damages and costs recovered by the plaintiff in an action of replevin in the Circuit Court? This, though not the first question presented by the record, is the first in logical order, and if decided in the affirmative, determines the cause in favor of the plaintiff in error.

It is very clear that imprisonment on an execution in such a case does not fall within the prohibition either of the Constitution, *Art. VI*, § 33, or of the non-imprisonment act of 1839, 2 *Comp. L. Ch.* 166.

Our statutes nowhere specify or enumerate the particular cases in which an execution may issue against the body; but it is provided generally, *Comp. L.* § 4444, that an execution may issue against the body "in cases authorized by law." The law by authority of which this may be done, must either be an existing statute or the common law. • We have no statute now in force which authorizes such an execution in an action of replevin. But on the contrary, the only provisions of our statute on the subject seem to refer to cases where the action may be commenced by a *capias ad respondendum*, and the defendant held to bail.

At the time of the passage of the non-imprisonment act, in 1839, the act of April 12, 1827 (*Laws of* 1827, *pp.* 239 and 240, *Revision of* 1833, *p.* 423) was in force, by the fourteenth section of which such an execution might probably have been issued in replevin; and this act seems to have continued in force, and such an execution might doubtless have been issued (notwithstanding the non-imprisonment act) until the Revision of 1838, which repealed the act of 1827. The provisions of this act have never been restored, nor have we been able to find any subsequent provision of statute which would authorize such an execution in the action of replevin, unless in fact such an execution was authorized in this action at common law, when it would fall within the provision of § 4444 of the Compiled Laws above cited.

Was this species of execution, then, authorized in this action at common law? We understand the common law rule to have been that a *capias ad satisfaciendum* could be issued in those cases, and those only, in which the suit might have been commenced by *capias ad respondendum*, or, in other words, when the latter was the immediate process upon the original writ. The only exception to this seems to have been when the defendant was an attorney or officer of the court; in such case he might be taken in

execution, though sued by bill: — 2 *Arch. Pr.* 276. Originally the *capias ad satisfaciendum* lay at common law only in trespass *vi et armis.* But as statutes were subsequently passed, giving the *capias ad respondendum* as the mesne process in other cases, the *capias ad satisfaciendum* was held to follow, as a common law incident. But in no case was the latter allowed without the former unless directly authorized by statute: — 1 *Sellon's Pr.* 513; *Comyn's Dig. Execution, C.* 9; *Tomlin's Law Dict. title "Capias ;"* 1 *Arch. Pr.* 276.

By our statute there is no case in which the arrest of the defendant is allowed on mesne process (or the original writ) in an action of replevin; and hence by the common law rule, no execution can be issued in the action against the body of the defendant.

By the New York Rev. Stat. (vol. 2 pp. 523, 524), the original writ of replevin might in certain cases contain a capias clause: and it was in that class of cases only that imprisonment seems to have been allowed upon the execution: — *See Roberts v. Randel,* 3 *Sandf. S. C.* 707.

English statutes before or since the Revolution, by which the *capias ad satisfaciendum* may have been extended to replevin, do not affect the question here, as all English statutes were expressly repealed here by the territorial statute of September 16, 1810: — *Cass Code* 119; *Laws of* 1820, *p.* 460; *Laws of* 1833, *p.* 563. We think therefore, there was no authority of law for issuing the writ in question, that it was not merely irregular and ·voidable, but absolutely void upon its face.

The writ being void, the bail bond was also necessarily void, and could impose no obligation to remain within the county; and, as the obligor must be presumed to have known the law, if he chose to remain in the county, it must be regarded as ·his own voluntary act for which he can claim no damages: — *Allen v. Shed,* 10 *Cush.* 375.

The Court therefore erred in allowing the bond to be

introduced in evidence, and in admitting the testimony ot Lamphere, to show that the nature of Bowker's business required him to go out of the county, and that he had been applied to to go out of the county on such business, even though the declaration might have sufficiently alleged those special damages, which we think it did not. The first, third, fourth and seventh grounds of error are therefore well assigned.

We think also the Court erred in refusing to charge as requested by defendants, that, "if the jury should find from the evidence, that at the time the bond for the jail limits was given by Bowker, he was not actually in custody, but had been permitted by the sheriff to go at large, the bond had no legal force, and the plaintiff was under no obligation to remain within the jail limits." These errors doubtless led the jury to give the verdict of seventy-five dollars damages; as it is difficult to see how, upon any other grounds, they could justly have given more than merely nominal damages.

A constructive, or technical arrest seems to have been impliedly admitted in the Court below in the argument and the requests to charge. But, had the point been directly raised by a proper request to charge, we are by no means satisfied that any arrest whatever could have been properly found from the evidence; for though the officer in his direct examination calls it an arrest, when he comes to explain, on his cross-examination, what he means by an arrest, and states all that was actually done, it appears that he merely told Bowker he had the writ, and that *he might consider himself arrested;* he went wherever he pleased, except that there was an understanding that he should not go out of the county; no restraint was exercised. or attempted or offered to be exercised over him. Had the officer, in addition to what he had said to Bowker, requested him to go with him either to prison or to give bail, or anywhere else in obedience to the writ, and he had submitted

and gone with the officer, this might doubtless have been held a legal arrest; but it seems to be well settled that mere words will not, *per se*, constitute an arrest (unless perhaps where the officer is in the room with the person to be arrested, and the words indicate an intention not to allow the party to leave at his pleasure, when the officer may be said to have him in his power) : — *George v. Radford,* 3 *C. & P.* 464; *Russen v. Lucas,* 1 *C. & P.* 153; *Chinn v. Morris,* 2 *C. & P.* 361; *Pocock v. Moore,* 1 *Ry. & M.* 321; and see *Gold v. Bissell,* 1 *Wend.* 210. But in *Arrowsmith v. Le Mesurier,* 2 *N. R.* (4 *B. & P.*) 211, the voluntarily going with the officer to the magistrate, without any declaration of the officer that he arrested him, was held insufficient to maintain an action of trespass and false imprisonment; and the voluntary giving of bail can not make an arrest nor constitute an imprisonment where there has been no arrest in fact (though the party arrested might be estopped by the bond to deny the arrest) : — *Bieten v. Burridge,* 3 *Camp.* 139; 1 *Salk.* 79.

The judgment must be reversed, with costs, and a new trial granted.

MANNING and CAMPBELL JJ. concurred.

MARTIN CH. J. did not sit in this case.