## MAST *v.* PURCHASE.

TRUSTS—ACCOUNTING—MINES AND MINERALS—FIDUCIARY RELA-
TIONS.

> Complainant subscribed the sum of $1,000 towards the pur-
> chase of a lease covering certain oil lands and a completed
> well, and this sum and all other subscriptions were placed in
> the hands of one of the defendants, a subscriber to the en-
> terprise, under a trust agreement. The payments to the
> trustee amounted to $12,500, of which he expended only
> $3,500 in purchasing the lease, retaining the remainder of the
> funds in his hands and claiming to have expended the entire
> amount. He, in fact, owned a two-thirds interest in the
> lease, a circumstance which he concealed from the other pro-
> moters. On a bill filed to compel an accounting, *held* that
> the trustee must be charged with his own subscription to the
> fund and must account for the entire amount remaining in
> his hands above the purchase price of the lease.

Cross-appeals from Washtenaw; Kinne, J. Submitted
June 16, 1910. (Docket No. 73.) Decided September
28, 1910.

Bill by Theodore E. Mast against George H. Purchase
and others for an accounting. From the decree rendered,
all parties appeal. Modified and affirmed.

*Robert E. Bunker*, for complainant.

*Andrew J. Sawyer, M. J. Lehman, B. M. Thompson*,
and *Thomas A. Bogle*, for defendants.

McALVAY, J. The controversy in this case arose out
of a certain transaction relative to the purchase of a lease
of oil lands for the sum of $12,500, which transaction is
evidenced by the following writing:

"**Oil Proposition.** It is understood by the undersigned
that Charles W. Miller of Detroit, Michigan, who is at
present time engaged in drilling oil wells in East Tilbury

township, Ontario, has acquired a lease upon one hundred and forty-six acres, more or less, in the township of East Tilbury, Kent county, Ontario, being parts of lots eight and nine, concession eleven, and that the said Charles W. Miller and his associates now offer to the undersigned their interests in this lease with one well drilled to the sand and properly cased, for the sum of twelve thousand five hundred dollars, and for the purpose of raising the said twelve thousand five hundred dollars, we, the undersigned, hereby agree to pay the amounts set opposite our respective names and to receive for that amount an interest in the entire lease and well, in the following proportion: Five hundred dollars buying one twenty-fifth of the entire proposition. We further agree to pay the amount of our respective subscriptions to George H. Purchase, who is hereby appointed trustee for the purpose of acquiring and paying for said lease and taking charge of the same until the completion of the first well, or until such time as the subscribers hereto shall make different arrangements."

This was signed by complainant and the defendants, each for the amounts set opposite his or her name.

Mr. Miller lived in Detroit, and, before this transaction, had business relations with defendant Purchase dealing in oil leases. According to the testimony of Purchase, Miller acquired this lease, known as the "Denison lease," in January, 1906, and Purchase acquired a two-thirds interest in it from Miller in April following, which he was to have for financing this lease; and at the time the foregoing "oil proposition" was prepared Purchase claims he was the owner of such interest. Mr. Miller does not agree with Purchase as to this transaction between them relative to the Denison lease, but counsel for complainant in their brief accept the version of Purchase of that transaction as correct. The "oil proposition" was prepared by defendants Purchase and Glenn in Detroit late in August, 1906. Defendant Glenn testifies that he entered into the employ of Purchase selling shares in the Denison lease venture at the time the subscription paper (oil proposition, *supra*) was prepared. Glenn was the active party in securing subscriptions to the full

amount of $12,500, which was all paid in, and $10,000 of which Purchase admits came into his hands as trustee. The balance, as appears from his statement, Glenn used with his knowledge and consent for the claimed purpose of buying the influence of a man in order to succeed in getting the shares all sold. The record shows that there was no truth in such claim. Glenn testifies that Purchase and Miller fixed the price on the property at $12,500 with one well completed to the sand, and he started out at once to sell shares. The first thing Glenn did was to subscribe $500 to the "oil proposition," and then Purchase signed for a like amount. Complainant was among the subscribers to the amount of $1,000. The account filed by Purchase on the hearing shows that Miller was paid for the lease but $1,500, and for the well put down by him $2,000.

Some months after paying in his money, complainant came into reliable information that only $3,500 was paid for the lease and the well, and that Purchase, the trustee, retained in his hands moneys belonging to the subscribers not accounted for. He thereupon filed this bill of complaint charging that he was deceived and defrauded by Purchase and Glenn and fraudulently induced by them to subscribe such money, and asking for an accounting and a receiver, making all the subscribers to the "oil proposition" parties defendant. No company or corporation was ever formed or organized. Whatever was done relative to buying some machinery and putting down a second well was accomplished by all the parties acting together voluntarily. The details of what was done later need not be given because not material to the questions in dispute. Purchase and Glenn and also defendant Woodworth answered separately denying complainant's charges. The majority of the other defendants answered admitting the allegations of the bill of complaint and asked for a receiver and an accounting. After issues joined, and before the hearing, Purchase and Glenn, the principal defend-

ants, requested a jury to try the issues of fact in the case. Upon this application questions were settled and submitted to the jury which sat and heard the testimony.

The following are the questions submitted to the jury, together with the answers given :

"(1) *Q.* Did the defendants Purchase and Glenn represent to Theodore E. Mast that the amount which was to be paid for the said Denison lease to C. W. Miller was $10,500 ?

"*A.* Yes.

"(2) *Q.* Did said defendants Purchase and Glenn represent to said complainant Theodore E. Mast that the land covered by said lease was valuable oil land ?

"*A.* Yes.

"(3) *Q.* Did the defendants Purchase and Glenn represent to said complainant that they had an option on the Denison lease ?

"*A.* Yes.

"(4). *Q.* Did the defendants Purchase and Glenn pay to the owners of said Denison lease the sum of $10,500 ?

"*A.* No.

"(5) *Q.* Did the defendants Purchase and Glenn or either of them represent to complainant before the closing of said contract for the purchase of said Denison lease that said lease was owned by Charles W. Miller and his associates ?

"*A.* No.

"(6) *Q.* Did the complainant at the time of closing the contract for the purchase of said lease rely upon the statement, if one was made by either Glenn or Purchase, that Miller was the sole owner of said lease ?

"*A.* Yes.

    [Signed]    "K. H. WHEELER, Foreman.
"Ann Arbor, March 27, 1908."

The case was then submitted to the court, and a written opinion was filed, in which, among other things, the court stated and found as follows :

"This cause has now been heard upon pleadings and proofs and the service and protection of a jury have been invoked by the defendants Purchase and Glenn, and the findings of the jury are now a matter of record. It is manifest that these defendants must fail to extract any

comfort from the report of the jury. The action of the jury is only advisory, and the cause returns to the court for final adjudication. The evidence in the case in my opinion fully establishes all of the material allegations of the bill of complaint. There might have been some plausibility in his action if the defendant Purchase had denied his trusteeship and refused an accounting, but his accounting is one of the most remarkable exhibitions of the execution of a trust that this court has ever examined. The defendant Purchase received these subscriptions upon the representation by him and his agent the defendant Glenn that this oil lease in the hands of Miller, the owner thereof, would cost the sum of $10,500. The evidence is incontrovertible that he only paid the said Miller for such lease the sum of $2,500, and that he thoroughly understood such to be the fact when he obtained these subscriptions upon the basis of an alleged cost of $10,500. It rests in doubt if even the $2,500 were wholly expended for this purpose. In the accounting of defendants Purchase and Glenn a very cowardly but wholly futile attempt was made by them to involve Prof. John R. Rood and Dr. Louis P. Hall. The evidence on this trial removes every possible suspicion or insinuation against either of these gentlemen and establishes beyond all controversy that they have acted in these matters with the utmost good faith, honor, and integrity."

But little need be added relative to what this record discloses. The findings of the jury and of the trial judge are in all respects supported by the evidence. The refusal of Purchase to account to these people for the $12,-500 cash which was collected from them for him, as trustee, and which he and Glenn held, and the accounting which was filed by him, together with his entire testimony given during the trial, indicate the character of this witness.

The statement of the account filed by him, as taken from the opinion of the court, is as follows (the receipt of $12,500 having been admitted):

DISBURSEMENTS.

| | | |
|---|---:|---:|
| Special expense in Ann Arbor (being the amount paid by said Glenn to buy certain mining stock of one Ortman for the use and benefit of said Glenn) | $2,000 | 00 |
| Paid to C. W. Miller (for his interest in the Denison lease) | 1,500 | 00 |
| To C. W. Miller, contract for drilling well No. 1 at a profit of $500 | 2,000 | 00 |
| To E. C. Glenn for one-third interest in the lease, $1,500.00, and one block of stock valued at $500.00 | 2,000 | 00 |
| To G. H. Purchase for one-third interest in lease at $1,500.00, and one block of stock valued at $500.00 | 2,000 | 00 |
| Contract price (allowed by said Purchase to said Glenn) for filling the subscription list | 3,000 | 00 |
| | $12,500 | 00 |

In this account is included his own and Glenn's subscription charged as cash. In the final decree in the court below in the accounting, Purchase and Glenn were given credit for $1,000, the amount of their subscriptions, and also for $1,000 claimed to have been paid Miller on the Hascall-Sloan and Denison leases. The testimony of these witnesses upon this proposition is unreconcilable. Miller says that the Denison lease was to be charged with but $700. Purchase says the $1,000 was paid Miller as his share in the profits of the Hascall-Sloan lease, and nothing was paid for any interest in the Denison lease. He cannot find fault if this testimony of his is taken as true. It would seem to be corroborated by the fact that in his accounting he has already claimed credit for $1,500 paid Miller for his interest in the Denison lease. Both items should be charged in this accounting against them. The subscriptions, because they should be required to stand their share of losses; the other item, because it was never paid. This would make the amount to be accounted for $9,000, with interest from September 1, 1906.

The decree of the circuit court is affirmed, except as hereinabove indicated. A decree will be entered in this

court accordingly, and the cause will be remanded to the circuit court for such further proceedings as may be proper. Complainant will recover costs of both courts against defendants Purchase and Glenn.

OSTRANDER, HOOKER, MOORE, and BROOKE, JJ., concurred.