# APRIL TERM, 1921.

## STEPHENSON v. PURCHASE.

1. EXECUTION—DISCHARGE OF DEBTOR UNDER POOR DEBTORS' ACT—EFFECT ON JUDGMENT.

On a bill to reach assets in the hands of defendant which are claimed to legally and equitably belong to the estate of her deceased husband, against whom a decree had been rendered and a *ca. sa.* issued to satisfy said decree, and who was discharged from custody under the poor debtors' act, such discharge *held*, to have been by operation of law and not by the consent of plaintiff, and not to operate as a satisfaction of the judgment, and although the debtor could not again have been imprisoned on the same judgment, all the remedies against his property were open to plaintiff.

2. SAME—COMMON LAW—STATUTES—CONSTRUCTION—STATUS OF DEBTOR AFTER DISCHARGE.

Section 12843, 3 Comp. Laws 1915, providing that when the body of the debtor shall have been taken on an execution no other execution may be issued against him or his property except in cases especially provided for by law, is but declaratory of the common law, and section 13628, 3 Comp. Laws 1915, fixing the status of the debtor with reference to his indebtedness after receiving his discharge under the poor debtors' act is also only declaratory of the common law, and does not create any exemption of the goods and chattels of the debtor.

Appeal from Wayne; Goff (John H.), J. Submitted April 9, 1920. (Docket No. 39.) Decided April 8, 1921.

Bill by Eugene J. Stephenson, receiver, against Marie C. Purchase to reach certain trust funds.

(95)

From a decree dismissing the bill, plaintiff appeals. Reversed and remanded.

*Rood & Visscher,* for plaintiff.

*Lodge & Brown,* for defendant.

BIRD, J. In the chancery case of *Mast* v. *Purchase,* 163 Mich. 35, which was a bill of complaint charging misappropriation of trust funds, a decree was entered against George H. Purchase, the husband of defendant, for the sum of $11,092.31. Purchase having since died, leaving no visible estate, this bill was filed to reach assets in the hands of defendant, which it is claimed legally and equitably belong to her husband's estate. The case came on for hearing, and it being disclosed by a stipulation of facts that George H. Purchase was arrested and imprisoned on a *capias ad satisfaciendum* to satisfy said decree, and was subsequently discharged from custody upon his application under the provisions of the poor debtors' act, the chancellor, upon motion, dismissed plaintiff's bill, holding that the discharge of Purchase under the poor debtors' act operated as a satisfaction of the decree. Plaintiff appeals, raising several questions, chief of which is, whether the discharge of an execution debtor under the provisions of our statute for the relief of poor debtors is a satisfaction of the debt.

It is undoubtedly true, as contended by defendant, that there are many statements in the books to the effect that at common law the taking of the body of the debtor in execution is a satisfaction of the debt. This statement of the rule is a general one and may be technically correct. It certainly is correct while the debtor is in prison, because during that period no other process can issue to enforce the judgment. But this general rule has its exceptions. The cardinal exception being when the debtor is released or discharg-

ed without the consent of the plaintiff it is no satisfaction of the debt. If the debtor escapes, dies in prison, or is discharged by operation of law, it is adjudged to be without the consent of plaintiff and, therefore, no satisfaction of the debt. On the other hand, if it can be shown that the escape or release had the consent of plaintiff, then the debt is adjudged to be satisfied. It is not improbable that the failure to note the exceptions, when stating the general rule, is responsible for much of the apparent variance among the cases. In most of them the general rule and the exceptions are stated together, but in some of them the general rule is stated and no mention is made of the exceptions.

One of the clearest and most comprehensive statements of the rule which has come under our observation is made in *State* v. *Simpson*, 46 N. C. 82. It is there said:

"It is well settled, that where a defendant is arrested, upon a *ca. sa.* in a civil suit, and is discharged, by the direction, or consent, of the plaintiff, it is in law a discharge of the debt, but where he is discharged by operation of law, as by an insolvent act or act of bankruptcy, or where he dies in prison, or escapes, it is not a discharge of the debt."

An examination of the numerous cases cited by counsel will disclose that most of them will square with the rule as above stated.

In reviewing the law relative to writs of *capias ad satisfaciendum* the American & English Encyclopædia has this to say upon the question:

"The rule is laid down in some of the cases that at common law the taking of the body of a defendant in execution amounts to a satisfaction of the judgment. According to the weight of authority, however, imprisonment on a body execution does not absolutely extinguish the judgment, but operates as a satisfac-

tion thereof so long as the imprisonment continues, and suspends for the time being all other remedies of the creditor against the debtor." 16 Am. & Eng. Enc. Law (2d Ed.), p. 49.

In 4 Comyn's Digest of the Laws of England, p. 241, it is stated under the heading "When execution may be after a former execution:"

"So, by the st. 21 Jac. 24. If a man dies in execution, it may afterwards be sued of his lands or goods.

"So, before that statute: For the body was not a satisfaction, but a pledge only for the debt, R. 5 Co. 87. R. cont. Cro. El. 850. 2 Cro. 136, 143. R. cont. per 3 J. Hob. 60. Mo. 858. 1 Rol. 903. 1. 40.

"So, since that statute, shall it be without question.

"So, if one of the defendants escapes, the plaintiff may afterwards sue execution against the other, though he has a remedy against the sheriff. R. 5 Co. 86 b. Cro. El. 555, 573. Cont. Mo. 459. R. acc. 2 Cro. 532. R. Cro. Car. 75. *Vide* Escape (E).

"So, if the conusor upon a statute of recognizance escapes, the conusee shall have execution against his lands and goods. R. 5 Co. 86 b. 87 b."

*Blumfield's Case*, 3 Coke, 174, is one of the early English authorities on the question. It is there said, in part:

"So, if the conusor be taken, and dies in execution, the conusee shall have execution of his goods and lands. And it was adjudged *Pasch*, 24 Eliz. in the common pleas between Jones and Williams, that where two men were condemned in debt, and one was taken and died in execution, yet the taking of the other was lawful. And then it was resolved by the whole court, that if the defendant in debt dies in execution the plaintiff may have a new execution by *elegit*, or *fieri facias*, for divers reasons.

"1. Because the plaintiff shall not be prejudiced, nor the defendant benefited by the act and wrong of the defendant, in nonpayment of his debt, when no default is in the plaintiff, he having pursued the due and ordinary course of law.

"2. The execution of the body is no satisfaction (as appears in 4 H. 7, 8, & 33 H. 6 (f) 47. *Hillary's Case* adjudged but a gage for the debt; as where a man has returned irreplevisable awarded, as it is said in 33 H. 6, 46, and therefore after his death he shall resort to a new execution.    *    *    *    So that his body is taken to the intent that he shall satisfy and when the defendant pays the money, he shall be discharged out of prison.

"3. The death of the defendant is the act of God, which shall not turn to the prejudice of the plaintiff, as it is said that in *Trewinyard's Case*, 38 H. 8, Dy. 60, the plaintiff shall not be prejudiced of his execution by act of law, which doth not wrong to anyone.

"4. It would be mischievous to the plaintiff to lose his debt without any default in him, and no mischief if a new execution should be done, for nothing would be liable to his new execution, but the lands and goods of the defendant, which in law and all equity ought to be subject to the payment of his debts."

In *Nadin* v. *Battie & Wardle*, 5 East, 147, the defendants were arrested and imprisoned on a *ca. sa.* Wardle was subsequently discharged under an insolvent debtors' act. Battie then moved for his discharge on the ground that his co-defendant had been released. The court said:

"The discharge cannot be said to have been with plaintiff's assent, because he did not choose to detain the party in prison at his own expense. Nor can the law, which works detriment to no man, in consequence of having directed the discharge of one defendant, so far implicate the plaintiff's consent, against the fact, as to operate as a discharge of the other."

Blackstone, in treating of the writ, recognizes the right of the plaintiff to have execution against the debtor's goods and chattels if he is discharged without his consent as by operation of law:

"But, by statute, 32 Geo. II., chap. 28, if a defendant, charged in execution for any debt not exceeding 100£ will surrender all his effects to his creditors

(except his apparel, bedding, and tools of his trade, not amounting in the whole to the value of 10£) and will make oath of his punctual compliance with the statute, the prisoner may be discharged, unless the creditor insists on detaining him; in which case he shall allow him 2s. 4d. per week, to be paid on the first day of every week, and on failure of regular payment the prisoner shall be discharged. *Yet the creditor may at any future time have execution against the lands and goods of such defendant, though never more against his person.*" 2 Cooley's Blackstone (4th Ed.), p. 416.

See, also, 11 Viner's Abridgement, 28; *Hillary's Case* (1460), Y. B. Hen. VI. 47; *Thompson* v. *Parish* (1859), 5 C. B. (N. S.) 685; *Linacre* v. *Rhode* (1589), 2 Leonard, 96.

*Sharpe* v. *Speckenagle*, 3 Serg. & R. (Pa.) 463, is an early American case and involves the liability of a surety for a debtor who was imprisoned and subsequently discharged under the insolvent laws. The court said:

"It is not pretended, that the insolvent act discharged Oellers from the debt; it only discharged him from imprisonment. But the counsel for the defendant contends, that the arrest of Oellers on the *capias ad satisfaciendum* was, in itself, a satisfaction of the debt, and therefore it amounted to a discharge of the recognizance. That the arrest on a *capias ad satisfaciendum* is, in itself, a satisfaction of the debt, is a position not to be maintained, unless the plaintiff consented to the discharge; then indeed the debt is gone."

The Federal Supreme Court considered the question in the case of *Tayloe* v. *Thomson,* 5 Pet. 358. In disposing of contentions similar to those made in the instant case, it was said:

"If the defendant escape, or is discharged by operation of law, the judgment retains its lien, and may be enforced on his property. The creditor may retake

him, or sue the sheriff for the escape. A judgment against him does not amount to a satisfaction of the original debt, but it retains its lien until the plaintiff has done or consented to some act, which amounts in law to payment; as the discharge of defendant from custody, or, in some cases, a levy on personal property. But we know of no rule of law which deprives a plaintiff in a judgment of one remedy by the pursuit of another, or of all which the law gives him. The doctrine of election, contended for by the plaintiff in error (if it exists in any case of a creditor, unless under the statutes of bankruptcy), has never been applied to a case of a defendant in execution discharged under an insolvent act, by operation of law; a contrary principle is recognized, as well settled, in 5 East, 147.

"The greatest effect which the law gives to a commitment on a *ca. sa.* is a suspension of the other remedies on the judgment during its continuance; whenever it terminates without the consent of the creditor, the plaintiff is restored to them all as fully as if he had never made use of any."

It is said in *Bannister* v. *Miller,* 54 N. J. Eq. 126 (32 Atl. 1066), that:

"The defendants claim immunity from liability upon another ground. This matter of defense rests upon the following facts appearing in the case. It appears that the actions brought by the complainants, in which the judgments already mentioned were recovered, were commenced by *capias ad respondendum,* and after the return of execution *capias ad satisfaciendum* were issued, upon which the sheriff took the bodies of the two Millers into custody. They were discharged from arrest, pursuant to the provisions of the insolvent debtors' act, having made and delivered an inventory of their property and given bond.

"The defendants insist that the complainants, having elected to proceed against the bodies of the Millers, are barred from proceeding in any other method, and that as to the complainants, their debts must be regarded as satisfied.

"There is no substance in this contention. The fact of a discharge under the insolvent act, by the express terms of section 28, is to relieve the debtor's person from liability to imprisonment for any provable debts against him at the time of the assignment made by him under the act, subject to this restriction only—the creditor is free to pursue his remedy against the discharged debtor or his property for any debt."

The question came before the Kentucky court in *Scott* v. *Colmesnil*, 30 Ky. 417, and it was observed that:

"The imprisonment of Lee, which seems to have been intended as the *gravamen*, could not, of itself, and alone, bar the action. The mere caption and imprisonment of Lee, did not satisfy or release the judgment, and could not, therefore, have operated either as an actual or legal exoneration of himself, or of his co-obligor. Nothing but actual satisfaction, or a liberation of Lee by the plaintiffs, or a release to him in fact, or in law, could have exonerated the defendant from any joint liability which pre-existed. Cro. El. 573; 5 Co. 86; Gow on Part. 257, Mar. pa. If Lee had escaped, or had been discharged, the defendant's liability would not have been thereby destroyed, or impaired. Gro. El. 479, 555, 573; 5 Co. *supra*."

*Trustees of the Poor* v. *Pratt*, 10 Md. 5, is in accord with the foregoing authorities.

"It is contended, in the first place, by the appellee's counsel, that the arrest of the defendant in the judgment, under a *ca. sa.* issued thereon, prior to the marriage, either amounted, in law, to a satisfaction of the judgment, or waived or suspended the lien thereof, so as to allow the dower to attach upon the lands. The contrary principle has been adopted in this State, as well as by the Supreme Court of the United States, in the case of *Tayloe* v. *Thomson*, 5 Pet. 358. In that case the court says:

"'The greatest effect, which the law gives to a commitment on a *ca. sa.*, is a suspension of other remedies on the judgment during its continuance.'

"It is not said that the lien is suspended, but on the contrary, the court expressly say that the plaintiff's 'remedies are cumulative and successive, which he may pursue until he reaches that point at which the law declares his debt satisfied. A *ca. sa.* executed does not extinguish it. If the defendant escape or is discharged by operation of law, the judgment retains its lien and may be enforced on his property;' again, 'it retains its lien until the plaintiff has done or consented to some act which amounts in law to payment.'
\* \* \*

"We are therefore of the opinion, that the proceedings upon the *ca. sa.* neither suspended the lien of the judgment so as to allow the dower to attach, nor does it afford a legal presumption of the satisfaction of the judgment."

Herman on Executions, pp. 573, 574, disposes of the point in this wise:

"It was formerly held that if a person taken on a *ca. sa.* died in execution, the plaintiff had no further remedy; because he determined the choice of this kind of execution, which, affecting a man's liberty, is esteemed the highest and most rigid in law. But if he die while so charged, or escape, be rescued or be discharged under any insolvent law discharging his person, new execution may be issued against his body if he escape or be rescued, or against his property if he die or be discharged, in the same manner as if he had never been charged in execution. The body is merely regarded as a pledge for the debt; it is taken not in satisfaction, but *ad satisfaciendum.* The presumption is that the debtor is solvent, but is coerced of his liberty until he makes payment. His imprisonment is not a punishment, but merely a means of getting at that property which he is supposed to possess and fraudulently withholds."

Other American cases in accord with the foregoing are: *Leake* v. *Ferguson,* 2 Grat. (Va.) 419; *Atwell* v. *Towles,* 1 Munf. (Va.) 175; *Tappan* v. *Evans,* 11 N. H. 311; *Prentiss* v. *Hinton,* 6 Blackf. (Ind.) 35; *Sheldon* v. *Kibbe,* 3 Conn. 214; *Pettus* v. *Smith,* 4 Rich.

Eq. (S. C.) 197; *Murray* v. *Shearer*, 7 Cush. (Mass.) 333; *Strode* v. *Broadwell*, 36 Ill. 419; 3 Freeman on Executions (3d Ed.), § 462.

The following cases will be found directly in point, because the debtor in each of them was discharged by an insolvent act the same as in the present case: *Nadin* v. *Battie & Wardle, supra; Sharpe* v. *Speckenagle, supra; Bannister* v. *Miller, supra; Tayloe* v. *Thomson, supra; Miller* v. *Miller*, 25 Me. 110; *Payne* v. *Dudley* (1793), 1 Wash. (Va.) 196, 198; *Hamilton* v. *Bredeman*, 12 Rich. Law (S. C.), 464; *Strode* v. *Broadwell, supra; Douglas* v. *Wallace*, 11 Ohio, 42.

The last case cited is illustrative of the holding in each.    The court said, in part:

"Two questions seem to be presented to the court for consideration in this case:

"*First:* As to the effect of an arrest on *ca. sa.*, where the arrest is discharged by the surrender of property; and,

"*Second:* Whether, in a case like the present, a court of chancery can furnish relief.

"As to the first question.    We are aware that, by the principles of the common law, if a judgment debtor is arrested on a *ca. sa.*, such arrest will be considered equivalent to a satisfaction of a judgment.    In fact, it is said to be the highest satisfaction known to the law.    But there are, and must necessarily be, exceptions to this rule.    If the creditor is not permitted to retain his debtor in custody, it would hardly do to say, that, by the arrest, his debt was discharged.    As if, for instance, a judgment debtor, arrested, is discharged under the insolvent laws, there can be no pretense that the judgment is satisfied.    If, at any subsequent period, the debtor shall accumulate property, the judgment can be enforced against that property, although it cannot be enforced by a second arrest of the body."

Counsel has cited the following English cases as sustaining the contention of the defendant: *Burnaby's Case* (K. B.), 1 Strange, 653; *Foster* v. *Jackson,*

Hobart, 124; *Vigers* v. *Aldrich* (1769), 4 Bur. (K. B.) 2482; *Jaques* v. *Withy* (1787), 1 Term Rep. 557; *Clarke* v. *Clement & English* (1796), 6 Term Rep. 525; *Tanner* v. *Hague* (1797), 7 Term Rep. 420; *Bassett* v. *Salter* (1677), 2 Mod. 136; *Blackburn* v. *Stupart* (1802), 2 East, 243.

*Foster* v. *Jackson* is an authority for defendant's contention, but the rule announced in that case was soon afterwards reversed by act of parliament.  (21 Jac. 1, chap. 24.)

In *Burnaby's Case* the subsequent relief sought was denied because the debtor was at the moment in custody, thereby following the rule that while the debtor is in custody no other process to enforce the judgment will issue.

The question litigated in *Bassett* v. *Salter* was the propriety of the remedy in case of an escape.   In the remaining cases relief was denied because plaintiff had consented to the release of the debtor.

The American cases cited by defendant are:   *Yates* v. *VanRensselaer* (1810), 5 Johns. (N. Y.) 364; *Cooper* v. *Bigalow*, 1 Cow. (N. Y.) 56; *Lathrop* v. *Briggs*, 8 Cow. (N. Y.) 171; *Ransom* v. *Keyes*, 9 Cow. (N. Y.) 128; *Ammidon* v. *Smith*, 1 Wheat. (U. S.) 447; *Stillwell* v. *VanEpps*, 1 Paige Ch. (N. Y.) 615; *Strawsine* v. *Salsbury*, 75 Mich. 542.

In the cases of *Cooper* v. *Bigalow* and *Stillwell* v. *VanEpps*, the defendants were in custody and relief was denied for this reason.   In *Ammidon* v. *Smith*, suit was brought on the bond which defendant gave to be admitted to the prison yard.   Subsequently he was discharged under the insolvent laws and it was held no recovery could be had against the sureties on the bond because the condition of the bond was not violated.   In the remaining cases the court found that the plaintiffs had consented to the release of the de-

fendants, which, under the rule, satisfied the judgment. Relief was denied upon this ground.

*Strawsine* v. *Salsbury* is a Michigan case. In that case it was stated that:

"It is well settled at the common law that the detaining of the body in execution is a satisfaction of the debt, and you cannot afterwards take the goods." Citing *Cooper* v. *Bigalow,* 1 Cow. (N. Y.) 56; *Lathrop* v. *Briggs,* 8 Cow. (N. Y.) 171; *Ransom* v. *Keyes,* 9 Cow. (N. Y.) 128.

This holding is similar to many other holdings in cases where plaintiffs have consented to a release of the debtor. An analysis of the case will show that the conclusion therein reached was because the defendant was released by the implied consent of the plaintiff. This is shown by the following reasons:

(*a*) It was made to appear by defendant that the debtor was released because the plaintiff refused to pay the statutory fees for his keeping. Plaintiff denied this and the issue, which was passed upon by the jury, was whether plaintiff was in such default. The jury found this fact in favor of defendant. This finding was equivalent to a finding that plaintiff had impliedly consented to the debtor's release by his refusal to pay the statutory fee. *In re Lauer's Estate,* 184 Mich. 503.

(*b*) The authorities cited by Mr. Justice LONG are not in point unless this theory of the opinion is accepted.

(*c*) The jury were charged in substance that, if they found that the plaintiff refused to pay the jail fees, the sheriff was justified in releasing him. And they were further charged that if the sheriff released the defendant without the knowledge or consent of the plaintiff, the plaintiff would be entitled to recover.

The attitude of the trial court is plainly indicated by this instruction. Had the question of veracity be-

tween the sheriff and plaintiff been decided in favor of the plaintiff, a judgment for him would have followed notwithstanding the fact that the defendant's body had been in execution on the judgment. These considerations are persuasive that by the language used in the opinion it was not intended to hold that the mere imprisonment of the debtor would satisfy the judgment. If it were so intended the language is *obiter dictum* and would not be controlling. This case must be classed among those in which the plaintiff consented to the discharge of the debtor.

After an exhaustive examination of the authorities we are not persuaded that the taking of a debtor's body in execution is a satisfaction of the judgment. It may have been true in the early history of the rule because then there was no way in which the debtor could be released except by payment of the debt or by the consent of the plaintiff, but, since debtors have been released under the insolvent laws against the consent of the plaintiff, there is no basis for holding that the debt is satisfied if the debtor has been in execution and released by operation of law. The overwhelming weight of authority is that the judgment is not satisfied if the debtor is released by the insolvent laws. Our opinion, therefore, is that when the husband of defendant was released under the provisions of the poor debtors' act the judgment was not satisfied. That while the debtor could not have been imprisoned again on the same judgment, all the remedies against his property were open to plaintiff.

The question as to the effect of our statutes on the controversy is much discussed by counsel. The chancellor was impressed that the statutes should control the question and accordingly he placed his decision upon that ground. An examination of the statutes which have been called to our attention discloses that most of the provisions are merely declaratory of the

common law. *In re Lauer's Estate,* 184 Mich. 497. Special stress, however, is laid upon section 12843, 3 Comp. Laws 1915:

"When the body of a party shall have been taken on an execution issued for that purpose, no other execution can be issued against him or his property, except in cases especially provided for by law."

This section in no way changes the common law, but is declaratory of it. The rule of the common law is that when the plaintiff has the body of his debtor in execution, his right to pursue other remedies against him are suspended. *LaBranch* v. *Herbst,* 192 Mich. 129; *Grosslight* v. *Wayne Circuit Judge,* 127 Mich. 414; 16 Am. & Eng. Enc. Law (2d Ed.), p. 49.

The words of the statute "except in cases especially provided for by law" mean by statute or common law. *Fuller* v. *Bowker,* 11 Mich. 204.

The statute means the same as the common law does and should receive the same construction. The opinion of Mr. Justice MONTGOMERY in *Grosslight* v. *Wayne Circuit Judge, supra,* indicates this is the view heretofore entertained by this court. In the course of that opinion it was said:

"In general, the taking a party in, execution is deemed as satisfaction of the judgment, so that no other writ can be sued out by the plaintiff upon the judgment *while the defendant remains in custody.* Burrill, N. Y. Prac. p. 314."

Reference is also made to the following section:

"The debtor, after being so discharged, shall be forever exempted from arrest or imprisonment, for the same debt, unless he shall be convicted of having sworn falsely upon his examination before the officer, or in taking the oath before prescribed." 3 Comp. Laws 1915, § 13628.

This statute is also declaratory of the common law. Under the common law when the debtor was once in

execution he could not be again imprisoned on the same judgment unless he had escaped or was rescued. This section undertakes to and does fix the status of the debtor with reference to his indebtedness after receiving his discharge under the poor debtors' act. It provides that after being discharged he may not again be imprisoned for the same debt. It makes no reference to his goods and chattels and creates no exemption in their behalf. Prior to the legislative session of 1877 this section read as follows:

"The debtor, after being so discharged, shall be forever exempted from arrest or imprisonment for the same debt, *and shall be discharged from such debt,* unless he shall be convicted of having sworn falsely upon his examination before the officer, or in taking the oath before prescribed." 2 Comp. Laws 1871, § 7333.

At that session the section was amended and the words *"and shall be discharged from such debt"* were eliminated, leaving the section to stand in its present form. Act No. 99 of the Public Acts of 1877. Had it been the intention of the legislature to protect the debtor's property from execution after being discharged, it is hardly conceivable that it would have eliminated those words from the statute. The fact that it did so indicates clearly a contrary intention. We do not think our statutes in their present form create any exemption in favor of the goods and chattels of a discharged debtor under the poor debtors' act.

This view of the main question makes it unnecessary to pass upon some of the other questions raised. The question whether the books and papers belonging to the deceased were properly identified and proven was not passed upon by the chancellor because he was of the opinion that the bill should be dismissed upon the main question. The decree dismissing the bill must be reversed and the records and files must be remitted to the trial court for such further proofs as the parties

may decide to introduce, subject, however, to the rules of law and practice of the court. The plaintiff will recover costs of both courts.

FELLOWS, STONE, CLARKE, and SHARPE, JJ., concurred with BIRD, J. STEERE, C. J., and MOORE, J., concurred in the result.

The late Justice BROOKE took no part in this decision.